Robert J. SUWANCHAI

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
1973; Robert W. Fisher.

Civ. No. 81–24–D.

United States District Court,
D. New Hampshire.

Dec. 15, 1981.

Alan P. Cleveland, Manchester, N. H., for plaintiff.

Thomas F. Birmingham, Boston, Mass., Paul H. Lawrence, Manchester, N. H., for defendant.

## ORDER

DEVINE, Chief Judge.

Plaintiff Robert J. Suwanchai, a former employee of Anchor Electric ("the Company"), has brought suit against his former collective bargaining agent, the International Brotherhood of Electrical Workers, Local 1973 ("the Union"), and Robert Fisher, a local Union official, alleging breach of

duty of fair representation and breach of contract. The case now comes before the Court on defendants' motions to dismiss for (1) failure to join an indispensable party, the Company; (2) failure to file suit within the applicable statute of limitations; and (3) failure to state a claim against defendant Fisher upon which relief can be granted.

### The Complaint

■ Plaintiff alleges that on or about April 25, 1979, he was informed by the Company that he was to be laid off due to a reduction in work force. On April 27, plaintiff filed a grievance with the Union alleging that others with less seniority had not been laid off, and that his layoff was in violation of contract. Although plaintiff's complaint does not so allege, it appears from the arbitration award appended to defendants' Answer as Attachment A that plaintiff was subsequently discharged for failure to exercise his "bumping rights".[1] According to plaintiff's Complaint, the Union delayed filing the grievance until August 17, 1979. On August 20, 1979, the Company denied the grievance. The grievance was subsequently referred to arbitration, and on January 29, 1980, an arbitrator denied the grievance on the ground that it was not submitted in a timely fashion as required by the collective bargaining agreement between the Company and the Union. Plaintiff filed suit in this court on January 12, 1981, alleging that the Union and Fisher, acting negligently and in bad faith, did

fail to timely file or properly present his grievance, and requesting damages for loss of wages and benefits, mental anguish, punitive damages, and attorney's fees.

### Indispensable Party

Defendants move to dismiss for failure to join an indispensable party, the Company. In the alternative, defendants move this Court to order joinder of the Company as a party defendant.

■ Clarification of plaintiff's pleadings and the resulting posture of this case is required before considering the merits of defendants' motion. Plaintiff charges defendants with breach of contract pursuant to § 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a)[2] ("LMRA"), and with breach of the duty of fair representation. No breach of contract action lies against the Union, for the Union assumes no contractual obligation to process every grievance unless the contract otherwise provides. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). However, the Union owes a duty of fair representation, derived from the National Labor Relations Act (as amended) 29 U.S.C. §§ 157, 158, to all employees, and must not process grievances in an arbitrary, discriminatory, or bad faith manner. At the present juncture, plaintiff's complaint is properly characterized as one alleging breach of the duty of fair representation. Jurisdiction is founded upon 28 U.S.C. § 1337.[3]

---

1. The fact of plaintiff's discharge is material to defendants' motion to dismiss for failure to join an indispensable party. Rule 12(b)(7), Fed.R. Civ.P. Extra-pleading material may be properly considered on a Rule 12(b)(7) motion. 5 Wright & Miller; Federal Practice and Procedure: Civil § 1364, pp. 662–64. Reference to the arbitration award is therefore proper in this context. Plaintiff's brief also concurs in defendants' factual assertion that plaintiff was discharged for failure to exercise his bumping rights.

2. 29 U.S.C. § 185(a) provides:

 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be

brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

3. When an action is brought jointly against the employer and the Union, the suit is often characterized loosely as a § 301 suit. *See Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) (*"Clayton"*). As a technical matter, however, the statutory basis of jurisdiction is § 1337, since the cause of action against the Union derives from statute, not contract. *Beriault v. Local 40, Super Cargoes & Checkers of the International Longshoremen's Union*, 501 F.2d 258 (9th Cir. 1974); *De*

■ Plaintiff has brought this suit solely against the Union apparently due to the mistaken belief that a breach of contract suit against an employer for wrongful discharge may not be maintained where an arbitration award upholding the discharge has been made. *See* Complaint ¶ 15; Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, pp. 15, 18. To the contrary, proof of breach of the Union's duty of fair representation will remove the bar of finality from an arbitrable decision, and suit against an employer pursuant to § 301(a) is permitted where such a breach of duty is alleged. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

Defendants argue that the Company not only may be joined, but must be joined, relying on Rule 19, Fed.R.Civ.P. Defendants contend that plaintiff cannot obtain full relief from the Union since the greater part of his damages flow from the Company's action in wrongfully discharging him. Defendants also contend that, in the absence of the Company, the Union will be faced with the inconsistent obligation of defending the discharge, a discharge which it challenged throughout the entire grievance process. Plaintiff responds that full damages are recoverable from the Union, and that the Company therefore need not be joined.

■ The parties mix apples and oranges. It is well established that a suit for breach of duty of fair representation and a § 301 action for wrongful discharge, though related, are separate and distinct causes of action.

The claims are closely related because, to prevail against the employer, the employee must establish that the union breached its duty of fair representation and that the employer breached the collective-bargaining agreement; similarly, to prevail against the union, the employee must prove that the union breached its duty of fair representation and, if he wishes to recover loss of employment damages for which the union is responsible, that the employer breached the agreement. See n.4, *infra*. Cf. *Czosek v. O'Mara*, 397 U.S. 25, 28–29, 90 S.Ct. 770, 772–73, 25 L.Ed.2d 21. However, despite this close relationship, the two claims are not inseparable. Indeed, although the employee in this case chose to sue both the employer and the union, he was not required to do so; he was free to institute suit against either one as the sole defendant. See *Vaca v. Sipes*, 386 U.S. 171, 186–187, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842.

*United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 72, 101 S.Ct. 1559, 1569, 67 L.Ed. 2d 732 (1981) (Stevens, J., concurring in part and dissenting in part). *See generally Hines v. Anchor Motor Freight, supra.* Thus, those courts which have considered the question of the indispensability of the parties in wrongful discharge suits brought under the LMRA and the Railway Labor Act (as amended), 45 U.S.C. § 151, *et seq.* (1926), have uniformly held that neither the union nor the employer is indispensable, absent some showing that the union's discriminatory conduct caused the discharge or that the employer was implicated in the union's breach of duty. *Czosek v. O'Mara*, 397 U.S. 25, 28–29, 90 S.Ct. 770, 772–773, 25 L.Ed.2d 21 (1970); *Kaiser v. Local No. 83*, 577 F.2d 642 (9th Cir. 1978); *De Arroyo, supra* at 286–87 (and cases cited therein).

■ Here there is no allegation that the Union procured plaintiff's discharge, nor is there any allegation that the employer knowingly acquiesced in or encouraged the Union's alleged breach of duty. Although plaintiff may not recover complete relief from the Union alone, there is no obstacle to the plaintiff's obtaining relief from the

*Arroyo v. Sindicato De Trabajadores Packinghouse, AFL–CIO*, 425 F.2d 281, 283 n.1 (1st Cir.), *cert. denied*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970), *rehearing denied*, 400 U.S. 953, 91 S.Ct. 232, 27 L.Ed.2d 260, 401 U.S. 926, 91 S.Ct. 863, 27 L.Ed.2d 831 (1971) (*"De Arroyo"*); *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 94 (3d Cir. 1968), *cert. denied sub nom., International Association of Machinists v. Brady*, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969).

Union for those damages for which it may be responsible.

Assuming a wrongful discharge by the employer independent of any discriminatory conduct by the union and a subsequent discriminatory refusal by the union to process grievances based on the discharge, damages against the union for loss of employment are unrecoverable except to the extent that its refusal to handle the grievances added to the difficulty and expense of collecting from the employer. If both the union and the employer have independently caused damage to employees, the union cannot complain if separate actions are brought against it and the employer for the portion of the total damages caused by each.

*Czosek v. O'Mara, supra,* 90 S.Ct. at 773.

The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer.

*Vaca v. Sipes, supra,* 386 U.S. at 197–98, 87 S.Ct. at 920–921. Although the total amount of damages attributable to the Union (rather than the Company) may indeed be negligible, Rule 19(a)(1) requires only that full relief be accorded among those already parties, not that all possible claims be litigated in one forum. This Court knows of no rule of law which would permit it to compel plaintiff to join another defendant in this action because it would be "desirable or useful to have as many claimants in the suit as possible". *Humphrey v. Stanolind Oil & Gas Co.,* 232 F.2d 925, 927 (5th Cir. 1956).

The Union does not run the risk of incurring multiple or inconsistent obligation if this suit goes forward without the Company. This is not an instance where a judgment against the Union would subject it to inconsistent obligations to other Union members, *cf. Bernard v. Atchison, T. & S.F.*

*Ry. Co.,* 90 F.R.D. 388 (D.Ill.1981). The crux of the Union's position is that it will be forced to adopt an argument at trial which is inconsistent with the argument made at arbitration. While the Court recognizes the awkwardness of the Union's position, the possibility of having to make inconsistent arguments does not rise to the level of an inconsistent legal obligation. Moreover, the liability of the Union is founded in the first instance on proof of breach of duty, which proof is totally unrelated to the propriety of the discharge.

■ Obviously, the better course would have been to sue both the Company and the Union in a single action. The damages plaintiff seeks may be largely unrecoverable against the Union. Punitive damages may not be assessed against a labor union. *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). Although mental damages may be awarded in breach of duty suits, such awards are only made in exceptional cases. *De Arroyo, supra* at 293. Lost wages may be recovered from the Union only if plaintiff is able to establish that the discharge was wrongful, and that damages over and above those attributable to the employer are properly traceable to Union misconduct. *Vaca, supra; Wyatt v. Interstate and Ocean Trans. Co.,* 623 F.2d 888 (4th Cir. 1980); *St. Clair v. Local Union No. 515 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 422 F.2d 128 (6th Cir. 1980).

The Court expresses no opinion at this juncture as to whether plaintiff may move to amend the complaint to join the Company. As is discussed more fully *infra,* the one-year statute of limitations for vacating arbitration awards applies to claims against the Union and the Company in this matter. Therefore, in order to amend this complaint, plaintiff must make a proper showing pursuant to Rule 15(c), Fed.R.Civ.P. The issues addressed therein are better deferred until such time, if any, as plaintiff files a motion for leave to amend.

### Statute of Limitations

The Union contends that the six-month limitation period found in § 10(b) of the LMRA, 29 U.S.C. § 160(b) [4] for the filing of unfair labor practice charges with the National Labor Relations Board should be applied to suits against unions for breach of the duty of fair representation. *See United Parcel Service, Inc. v. Mitchell, supra* (Stewart, J., concurring in the judgment). The Union argues that since the statutory duty of fair representation is derived from the LMRA,[5] it is appropriate to borrow the six-month limitations period from the federal act. Relying on *United Parcel Service, Inc. v. Mitchell, supra* (Opinion of Stewart, J.), the Union further argues that the national labor policy favoring prompt and final resolution of labor disputes militates in favor of adopting the shorter federal statute of limitations, rather than the one-year New Hampshire statute of limitations for proceedings to vacate an arbitration award, N.H. RSA 542:8. Since the complaint in this case was filed over eleven months from the date of entry of the arbitration award, application of the LMRA's six-month statute of limitations would bar the instant action.

For the reasons discussed more fully *supra*, the Court finds and rules that this suit in its present posture is properly characterized as a suit for breach of the duty of fair representation. The question before the Court, therefore, is what statute of limitations should be applied in a duty of fair representation suit against a union.

Congress has not specified what statute of limitations should govern a duty of fair representation action. Nor has Congress specified what statute of limitations should apply when the employee's duty of fair representation claim is part of a § 301 suit against an employer for breach of the collective bargaining agreement. In the absence of a Congressionally mandated statute of limitations, the task of choosing the appropriate statute of limitations in § 301 and § 1337 actions has fallen to the courts. In *United Automobile, Aerospace, and Agricultural Implement Workers of America (U.A.W.) A.F.L.-C.I.O. v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701–05, 86 S.Ct. 1107, 1110–1113, 16 L.Ed.2d 192 (1965) ("*Hoosier Cardinal*"), the Supreme Court held that § 301 suits against an employer for violation of contract should be governed by an appropriate state statute of limitations, rather than by some implied federal limitation period. The Court in *United Parcel Service v. Mitchell, supra*, accepted *certiorari* some fifteen years after its decision in *Hoosier Cardinal* for the sole purpose of determining which state statute of limitations should apply in an employee's § 301 wrongful discharge suit. The Court held that the state statute of limitations for vacation of arbitration awards should apply to breach of contract action against the employer. Although Justice Stewart in a concurring opinion expressed the opinion that all suits against an employer and a union for breach of contract and breach of the duty of fair representation, respectively, should be governed by the six-month time bar contained in § 10(b) of the LMRA, the issue was not raised below, and the majority specifically declined to rule on this issue. *United Parcel Service v. Mitchell, supra*, 101 S.Ct. at 1562, n.2. Neither *Hoosier Cardinal* nor *Mitchell* directly addresses the question presented here, that is, wheth-

---

**4.** Section 10(b) provides in pertinent part:

Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agency, at a place therein fixed, not less than five days after the serving of said complaint:

PROVIDED, *That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the board and the service of a copy thereof upon the person against whom such charge is made....*
(Emphasis added.)

**5.** *See Ford Motor Company v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

er a suit against a union for breach of duty of fair representation should be governed by a state statute of limitations or by a federal limitation period implied from § 10(b) of the LMRA.

The First Circuit has previously had occasion to address this issue, however. In *De Arroyo, supra,* the Court held that the suit of several employees against their union was governed by the state tort statute of limitations rather than by the six-month time bar provided by § 10(b). Recognizing that a suit against a union "is *not* founded on the labor contract, [and that] the suit may not be a § 301 suit", the Court nevertheless held that the "logic of *Hoosier Corp.* dictates the adoption of express state statutes of limitations in the absence of an express federal limitation period". *Id.* at 287 (emphasis in original). The Court rejected the argument that § 10(b) was an express federal limitation period which should be applied to duty of fair representation claims, stating:

> [S]ince *Vaca v. Sipes* established that federal labor policy does not require that individual suits be preempted simply because the NLRB might also be able to prosecute unions for such conduct, we see no reason why such private litigation *must* be limited by the same period as the NLRB is. By giving individual employees a period longer than the NLRB's six months, we encourage initial recourse to the Board without precluding a subsequent civil suit if the Board refuses to pursue the matter for the individual employee.

*Id.* (emphasis in original).

Defendant argues that the holding of *De Arroyo* has been superceded by *Mitchell,* and that the question of the applicability of a federal statute of limitations is an open question in this Circuit. *See Sear v. Cadillac Automobile Company,* 654 F.2d 4 (1st Cir. 1981) ("*Sear*"). Although the Court is not bound by *Mitchell* in the § 10(b) issue, the underlying reasoning of *De Arroyo* and *Hoosier Cardinal* precludes a departure from the well established rule that state statutes of limitation should apply to feder-

al causes of action in the absence of an express federal limitations period.

In *Hoosier Cardinal* the Court refused to apply a uniform federal statute of limitations to § 301 actions, relying in part on the legislative history of § 10(b) itself.

> That Congress did not provide a uniform limitations provision for § 301 suits is not an argument for judicially creating one, unless we ignore the context of this legislative omission. It is clear that Congress gave attention to limitations problems in the Labor Management Relations Act, 1947; it enacted a six months' provision to govern unfair labor practice proceedings, 61 Stat. 146, 29 U.S.C. § 160(b) (1964 ed.), and it did so only after appreciable controversy. In this context, and against the background of the relationship between Congress and the courts on the question of limitations provisions, it cannot be fairly inferred that when Congress left § 301 without a uniform time limitation, it did so in the expectation that the courts would invent one.

*Id.,* 383 U.S. at 703, 86 S.Ct. at 1112. (footnote omitted).

Despite this language in *Hoosier Cardinal* to the contrary, the Union argues that the six-month statute of limitations in § 10(b) evinces a Congressional intent to impose the same statute of limitations to employee suits against Unions for breach of the duty of fair representation because these suits also arise under the LMRA. This argument overlooks the fact that the plain language of § 10(b) states that the six-month limitation period applies only to the filing of charges before the National Labor Relations Board, and not to any implied statutory causes of action. Congress could not have intended for the § 10(b) statute of limitations to apply to suits such as the present one, for the first cases recognizing the union's duty of fair representation under the Labor Management Relations Act were not decided until six years after an amendment adding the six-month statute of limitations to § 10(b) of the Act

was passed.[6] And although the duty of fair representation arises under the LMRA, in reality an employee's suit against his or her union is more often than not part and parcel of a breach of contract suit against his employer, governed by § 301. *See generally Clayton, supra; Mitchell supra,* 101 S.Ct. at 1564 (an unfair representation claim is more a creature of labor law as it has developed under § 301 than of contract law). The reasoning of *Hoosier Cardinal* as to Congressional intent is therefore properly applied to the statute of limitations issue presented by a duty of fair representation suit where, as here, the employee alleges a wrongful discharge in violation of contract as the basis of his claim for damages against the Union in a duty of fair representation suit.

The Union further argues that the adoption of the longer state statute of limitations, rather than the shorter six-month limitation period of § 10(b), would be contrary to the national labor policy favoring the finality of arbitration decisions and rapid resolution of labor disputes. It is the Union's contention that § 10(b) represents a legislative determination that actions involving disputes under collective bargaining agreements should be governed by § 10(b). *See Mitchell, supra,* 101 S.Ct. at 1567–1568 (Opinion of Stewart. J.). Since the alleged misconduct of the Union is also arguably an unfair labor practice, the Union further argues that "there is no basis, in logic or policy, for providing different time limits for the assertion of the same claim depending on the forum—federal court or National Labor Relations Board—chosen to litigate the matter". Defendants' Memorandum in Support of Motion to Dismiss, at 20.

■ The Court disagrees. The National Labor Relations Board's jurisdiction over conduct constituting an unfair labor practice is not exclusive. A judicial forum exists for vindication of fair representation suits in order to ensure that individual em-

ployees are afforded adequate redress for a union's breach of duty. *Vaca, supra,* 386 U.S. at 181–83, 87 S.Ct. at 912–913. The primary concern of the Board is effectuating the policies of the federal labor laws, not providing remedial relief for the wrongs done individual employees. *International Brotherhood of Electrical Workers v. Foust, supra,* 442 U.S. at 49, n.12, 99 S.Ct. at 2126 n. 12. "[T]he duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca, supra,* 386 U.S. at 182, 87 S.Ct. at 912.

■ The purpose served by the § 10(b) time bar must be viewed in light of the unique mandate and functions of the Board, as opposed to those of the Court. The Board is charged with the responsibility of *preventing* unfair labor practices. 29 U.S.C. § 160(a). The scope of its authority to resolve unfair labor practice charges extends to the conduct of parties during organizing drives and at the bargaining table, and during strikes, picketing, secondary boycotts, and discrimination due to union activity. 29 U.S.C. § 158. The § 10(b) time bar was enacted to ensure that the Board's jurisdiction could be exercised before those disputes became stale. *Machinists Local v. Labor Board,* 362 U.S. 411, 424, 80 S.Ct. 822, 831, 4 L.Ed.2d 832 (1960).

■ A duty of fair representation suit such as the case at bar presents an entirely different situation, however. The alleged wrong is over and done with; the dispute is not on-going. The rationale underlying the adoption of § 10(b)—the need for a quick, uniform limitations period in order to strengthen and defend the stability of bargaining relationships—is not wholly applicable here.

The need for uniformity, then, is greatest where its absence would threaten the

---

6. Conversely, if one assumes that the Supreme Court's decision in *Steele v. Louisville & N.R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), implying a duty of fair representation under the Railway Labor Act, put Congress on

notice that a similar duty would be read into the LMRA, Congress' omission of a statute of limitations for breach of duty suits is analogous to the failure to enact a limitations period for § 301 suits.

smooth functioning of those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it. *For the most part, statutes of limitations come into play only when these processes have already broken down. Lack of uniformity in this area is therefore unlikely to frustrate in any important way the achievement of any significant goal of labor policy.*

Hoosier Cardinal, *supra*, 383 U.S. at 702, 86 S.Ct. at 1111 (emphasis added). *See also Santos v. District Council of New York City*, 619 F.2d 963 (2d Cir. 1980) (applying state statute of limitations for enforcement of arbitration award rather than an implied federal period). Although *Hoosier Cardinal* dealt with a § 301 suit by a union against an employer rather than an individual's suit for damages against a union, the difference is not controlling. By definition, a suit by an employee against his union alleging that the union's misconduct prevented him from prevailing against his employer at arbitration will arise only after the contractual dispute resolution mechanisms have failed. Were the present suit one for injunctive relief, *Boys Markets, Inc. v. Retail Clerk's Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), or one involving the interpretation of a collective bargaining agreement which would affect the rights and liabilities of a substantial number of past or present employees, *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), this Court might be more inclined to find that the national labor policy required the application of the § 10(b) limitation period. *See Hoosier Cardinal, supra*, 383 U.S. at 705, n.7, 86 S.Ct. at 1113, n.7. However, where the issue at hand is a suit for damages by a single employee, the Court finds, as did the First Circuit in *De Arroyo, supra*, that national labor policy does not require the adoption of the § 10(b) time bar by a judicial forum designed to "vindicate 'uniquely personal' rights" of individual employees. *Hines v. Anchor Motor Freight, Inc., supra*, 424 U.S. at 562, 96 S.Ct. at 1055.

The principal attribute of the § 10(b) time bar is its brevity. Both *Mitchell* and *Hoosier Cardinal* stand for the proposition that a limitations period which promotes the relatively rapid disposition of labor disputes is to be favored. *Mitchell*, 101 S.Ct. at 1564. Yet brevity is only one of the factors to be employed in choosing *which* state statute of limitations to apply, and cannot, in and of itself, require the adoption of § 10(b), absent a showing that the national labor policy would be frustrated by the application of a state limitation period. *Cf. Occidental Life Insurance Company v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1976). This is not a case where state statutes of limitations were enacted totally without regard to the federal labor policy. *Cf. Mitchell*, 101 S.Ct. at 1564–65; N.H. RSA 542:1; N.H. RSA 542:8.

■ There are also "relevant difficult subsidiary questions", *Sear, supra* at 7, which persuade this Court that the borrowing of the § 10(b) time bar would create practical problems far outweighing any supposed benefit which would enure by its application. For example, would the filing of charges with the Board toll the statute as to the Union? the Company? Must the Company receive notice of the filing of charges for the statute to toll? Can the Company be properly governed by the § 10(b) limitation period? Whatever the reasoning may be for borrowing the § 10(b) time bar in breach of duty suits, the logic of applying the § 10(b) time bar to a suit against the employer is far less compelling, since the employer is not charged with any unfair labor practice. *Mitchell, supra*, 101 S.Ct. at 1570–71 (Stevens, J., concurring in part and dissenting in part); *Davidson v. Roadway Express, Inc.*, 650 F.2d 902, 904, n.2 (7th Cir. 1981). The mandatory application of different statutes of limitations to two defendants in a single action is a prospect the Court is loath to encourage unnecessarily. Where possible, the preferable course in § 301/§ 1337 actions is to assure that the action may proceed against both defendants. *See generally, Clayton, supra*,

101 S.Ct. at 2099; *Vaca, supra*, 386 U.S. at 187–88, n. 12, 87 S.Ct. at 915, n. 12.

The Court concludes that the national labor policy does not require and may in fact be ill served by the kind of "judicial inventiveness" which is urged upon it here. The remaining question is which state statute of limitations to apply in this action.

 New Hampshire law provides a one-year statute of limitations for suits to vacate arbitration awards, and a six-year statute of limitations for personal actions. N.H. RSA 542:8, 508:4.[7] The Court's holding in *Mitchell* dictates that the limitation period for suits to vacate an arbitration award would apply to the Company should the plaintiff attempt to amend his complaint to join the Company as a defendant. The *dictum* of *Mitchell* also strongly suggests that the Union should be governed by the same limitation period. *Id.*, 101 S.Ct. at 1564. The First Circuit in *De Arroyo* has previously held that the tort limitations period should apply to breach of duty suits. However, in *De Arroyo* the Union did not take the employees' grievance to arbitration, and no award was made. On the facts of this case, the Court finds and rules that the one-year limitation period for suits to vacate an arbitration award, rather than the six-year period for tort actions, should apply. Admittedly, an employee's claim against his or her union, unlike the claim against the employer, is not barred by the arbitration award, and "no arbitration award need be undone if the employee prevails". *Mitchell, supra*, at 1569 (Stevens, J., concurring in part and dissenting in part). However, a § 301 wrongful discharge/§ 1337 duty of fair representation suit is really a hybrid action. Although the Union's liability for breach of duty may be determined without reference to the award, the essence of any damages claim against the Union is that plaintiff's discharge was wrongful, an allegation which does go behind the award. Given the na-

tional labor policy favoring prompt resolution of labor disputes and the finality of arbitration awards, the shorter one-year period is to be preferred over the six-year statute. *Mitchell, supra*, 101 S.Ct. at 1564.

 The Court finds and rules that where a discharged employee brings an individual suit for damages against his or her union (and/or company) alleging breach of the duty of fair representation (and/or breach of contract), and a final arbitration decision has been entered, the one-year statute of limitations for vacation of arbitration awards will apply to both the union and the company. Since the instant action was filed less than twelve months from the date of the entry of the arbitration award, defendants' motion is denied.

### Defendant Fisher

 Defendant Fisher moves to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R. Civ.P., on the ground that he is not subject to suit for damages in his individual capacity. Section 301(b) of the LMRA, 29 U.S.C. § 185(b), states:

> Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

(Emphasis added.) It is § 301(b) which permits a labor union, an unincorporated association, to be sued as an entity in federal court. The plain meaning of § 301(b) is

---

7. N.H. RSA 508:4 states as follows:

Except as otherwise provided by law all personal actions may be brought within six years after the cause of action accrued, and

not afterwards. This section shall not affect causes of action accrued prior to its effective date.

that damages actions of any kind may not lie against individual union members in federal court, *see Williams v. Pacific Maritime Association*, 421 F.2d 1287 (9th Cir. 1970), including breach of duty suits, *Henry v. Radio Station KSAN*, 374 F.Supp. 260, 267 (N.D.Cal.1974). Interpreting the intent of Congress in passing § 301(b), the Supreme Court has held that individual union members may not be sued for damages by an employer where the union has breached the no-strike provision of its collective bargaining agreement, *Atkinson v. Sinclair Refining Company*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), whether or not the union authorized the strike, *Complete Auto Transit v. Reis*, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981). Although *Atkinson* and *Reis* are factually distinguishable from the case at bar, these cases properly stand for the broader principle of federal labor law that it is the Union as an entity, not individual members of officers, which is the proper party in a suit for damages. *See generally, Cadillac Automobile Company of Boston v. Metropolitan Automobile Salesmen, Local Union No. 122*, 588 F.2d 315, 316 (1st Cir. 1978). Accordingly, because plaintiff has filed suit for damages against Fisher in his individual capacity, the action against him must be dismissed for failure to state a claim upon which relief can be granted.

Accordingly, the Court finds and rules that:

1. Defendants' Motion to Dismiss for Failure to Join an Indispensable Party is denied.

2. Defendants' Motion to Dismiss for Failure to Timely File Within the Statute of Limitations is denied.

3. Defendant Fisher's Motion to Dismiss for Failure to State a Claim is granted.

SO ORDERED.