889 F.Supp. 707 (1995)
Kenneth F. MADDEN, Plaintiff,
v.
INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ASBESTOS WORKERS, William G. Bernard, Individually and as General President, James A. Grogan, Individually and as General Secretary/Treasurer, Defendants.
No. 94 CV 7382(BDP).
United States District Court, S.D. New York.
April 19, 1995.
*708 John M. Dillon, Caruso & Dillon, Mamaroneck, NY, for plaintiff.
Seymour M. Waldman, Hanan B. Kolko, Vladeck Waldman Elias & Engelhard, New York City, Robert D. Kurnick, Martin J. Crane, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, for defendants.

*709 MEMORANDUM DECISION
PARKER, District Judge.

FACTS
This action for violations of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411, et seq., the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, libel and infliction of emotional distress is before this Court on the individual Defendants' motion to dismiss for lack of personal jurisdiction and failure to state a claim against them, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.
In June, 1991, the Plaintiff, Kenneth Madden ("Madden"), was elected business manager/financial secretary of the Asbestos Abatement Local 201 ("Local 201"). Local 201 is an affiliate of the Defendant International Association of Heat and Frost Insulators and Asbestos Workers ("the International"). The Defendant William Bernard ("Bernard") is the General President of the International, and the Defendant James Grogan ("Grogan") is the General Secretary/Treasurer of the International. (Bernard and Grogan are hereinafter collectively referred to as "the individual Defendants.") Their offices are in Washington, DC.
As an officer of Local 201, one of Madden's duties was to represent the interests of Local 201 vis-a-vis the International. On at least two occasions, Bernard and Grogan discussed the amount of dues owed the International by Local 201 at union meetings conducted in New York, in February and March, 1993. On both occasions, Madden informed Grogan that Local 201 disputed Grogan's claim as to the amount owed.
Bernard subsequently wrote to Madden threatening to remove him from office if Local 201 did not pay the amount allegedly owed the International. At Grogan's request, Madden again met with him in New York at the offices of Local 201 to discuss the amount of dues owed. Madden requested another meeting with Bernard, who instructed him to meet both him and Grogan in New York City in October, which Madden did. The next day in New York City, Madden also met with Bernard privately to discuss to amount of dues owed.
In November, Grogan personally delivered to Madden in New York, a letter from Bernard removing him from his position as business manager/financial secretary of Local 201 for alleged infractions of the National Labor Relations Act and ERISA. The letter was subsequently published in "The Asbestos Worker Journal," a magazine published and distributed by the International. In the letter, Bernard appointed a Vice President of the International, Jack Keane ("Keane"), as his agent to hold a hearing to determine whether Madden's removal was warranted. The hearing was held in December, at the offices of Local 201 in New York. At the hearing, Keane refused to permit the presence of Madden's attorneys. Madden refused to continue with the hearing.
By letter, Bernard advised Madden that the hearing would continue in January at the offices of Local 201 in New York, without any attorneys and regardless of whether Madden was present. Madden attended the hearing accompanied by a member of Local 201, as allegedly permitted by the Constitution and By-laws, who was refused entry to the hearing by Keane. Grogan attended and apparently testified at the hearing. In February, 1994, Bernard informed Madden by letter that the "evidence" produced at the hearing had convinced him that Madden's removal was "warranted."
In October, 1994, Madden filed this action against the International and Bernard and Grogan, "individually" and in their capacity as officers of the International. Bernard and Grogan have now moved to dismiss the complaint, on the ground that this Court lacks in personam jurisdiction. They also move to dismiss Madden's second claim for violations of LMRA for failure to state a claim against them. In addition, they move to dismiss the complaint as against Grogan on the grounds that it fails to allege any action or wrongdoing by him.

DISCUSSION

1. Personal Jurisdiction

At this phase of the litigation, prior to discovery, the plaintiff can defeat a motion to *710 dismiss for lack of personal jurisdiction by making a prima facie showing of jurisdiction solely through allegations. See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.1990), cert. denied, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). Because the motion is decided solely on the basis of affidavits and pleadings, doubts as to jurisdiction at this stage must be resolved in favor of the plaintiff. See Interface Biomedical Laboratories v. Axiom Medical, Inc., 600 F.Supp. 731, 735 (E.D.N.Y.1985). To defeat the motion, Madden need only make a prima facie showing that facts are alleged that would afford this Court personal jurisdiction over the individual Defendants.
In this federal question case the Court must, of course, look to the forum state's long-arm statute, Civil Practice Law and Rules ("CPLR"), § 302, to determine the existence of in personam jurisdiction. See Editorial Musical Latino Americana v. Mar Intern., 829 F.Supp. 62, 64 (S.D.N.Y.1993); United States v. First Nat'l City Bank, 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965). The individual Defendants argue that this Court lacks personal jurisdiction over them because Madden has failed to allege that, under § 302(a)(1),[1] the Defendants transacted business in New York and that his claims arise from the Defendants' business transactions.[2]
The `transacts business' clause of the long-arm statute "gives New York personal jurisdiction over a non-domiciliary if two conditions are met: first, the non-domiciliary must `transact business' within the state; second, the claims against the non-domiciliary must arise out of that business activity." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986). Under § 302(a)(1), "a single transaction is sufficient, even if the defendant never enters the state, so long as the defendant's activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198-99, 522 N.E.2d 40, 43 (1988).
The individual Defendants first argue that because their activities were not "commercial," i.e., not profit-seeking, they were not transacting "business," within the meaning of § 302(a)(1). Courts, however, have consistently construed the term "business," in the context of New York's long-arm statute, to encompass more than profit-seeking activities. The term "transacts any business" has been held to include: the conduct of audits, United States Steel Corporation v. Multistate Tax Commission, 367 F.Supp. 107 (S.D.N.Y.1973); the conduct of proceedings and disciplinary hearings on membership, Garofano v. United States Trotting Association, 78 Misc.2d 33, 355 N.Y.S.2d 702 (1974); the execution of a separation agreement, Kochenthal v. Kochenthal, 28 A.D.2d 117, 282 N.Y.S.2d 36 (1967); the making of a retainer for legal services, Elman v. Belson, 32 A.D.2d 422, 302 N.Y.S.2d 961 (1969); the entry into New York by nondomiciliary defendants to attend one meeting concerning shares held in street name by a New York broker, Parker v. Rogerson, 33 A.D.2d 284, 307 N.Y.S.2d 986, appeal dismissed, 26 N.Y.2d 964, 311 N.Y.S.2d 7, 259 N.E.2d 479 (1970); the entry into New York by a nondomiciliary to receive medical treatment, Cohen v. Haberkorn, 30 A.D.2d 530, 291 N.Y.S.2d 119 (1968).
"The test is whether the defendant has engaged in `some purposeful activity in this State in connection with the matter in suit.'" United States Steel Corporation, 367 F.Supp. at 121, citing Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 76 (1965). Clearly, the individual Defendants' attempts *711 to collect dues and their holding of an evidentiary hearing to enforce their management policies is "purposeful activity" in the State of New York under the "transacts any business" test of § 302.[3]
The individual Defendants argue next that the Court does not have personal jurisdiction over them, because all of their actions in New York "were taken on behalf of the International." In Kinetic Instruments v. Lares, 802 F.Supp. 976 (S.D.N.Y.1992), the Court surveyed the existing case law on when an individual corporate employee could be subject to jurisdiction in New York for his employer corporation's activities. The Court first noted that the New York Court of Appeals, in Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 468, 472, 527 N.Y.S.2d 195, 199-200, 202, 522 N.E.2d 40, 44, 47-48, had recently abandoned the fiduciary shield doctrine that the Second Circuit had attributed to it. The fiduciary shield doctrine provided that a corporate employee sued in his personal capacity would not be subject to jurisdiction if his contacts with the forum state were solely on behalf of his corporate employer.
The Court surmised, in light of Kreutter's abandonment of the fiduciary shield doctrine, that although an individual officer was not to be subject to jurisdiction merely because jurisdiction could be obtained over the corporation, neither would he be insulated from jurisdiction simply because his contacts with New York occurred in his capacity as a corporate officer. The Court noted that in some cases a company subject to jurisdiction in New York could serve as an agent for individual out-of-state defendants.
The Court looked to Kreutter and a recent Second Circuit case, Retail Software Services, Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir.1988), for the test as to when an out-of-state individual defendant is subject to jurisdiction in New York on the basis of his company's activities. The Court in Kreutter held that the plaintiff "need only convince the court that [the company] engaged in purposeful activities in this State in relation to [his cause of action] for the benefit of and with the knowledge and consent of the [individual] defendants and that they exercised some control over [the company] in the matter." Kreutter, 71 N.Y.2d at 467, 527 N.Y.S.2d at 199, 522 N.E.2d at 44. The Second Circuit interpreted Kreutter as distinguishing between one who is "a primary actor in the transaction ... in New York," and "some corporate employee who played no part in it." See Retail Software Services, 854 F.2d at 22.
Madden has alleged that Bernard and Grogan knew, consented to and exercised control over the activities of the International in New York; he has alleged that they attended meetings in New York to collect dues from Local 201 and held a hearing in New York to enforce their management policies. Because he has alleged facts that, taken as true, establish that Bernard and Grogan were "primary actors" in the International's business activities in New York, from which his claims arise, the individual Defendants' motion to dismiss for lack of personal jurisdiction is denied.

2. Liability of Individual Officers under the LMRA

The individual Defendants also argue that Madden has failed to state a claim against them under Section 301 of the LMRA, ("§ 301").[4] The individual Defendants *712 assert that courts have construed § 301(b) to immunize individual union officers from liability for monetary damages.
Two Supreme Court cases have established the analytical framework for § 301 claims against individual union officers. In Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), an employer brought suit under § 301 against a union and individual union officers for damages for breach of a no-strike agreement. The Court examined the legislative history of § 301 and concluded that the provision limiting the liability of individual members was "a deeply felt congressional reaction to the Danbury Hatters case."[5]Atkinson, 370 U.S. at 248, 82 S.Ct. at 1324. The Court held that under § 301 "when a union is liable for damages ..., its officers and members are not liable for these damages [on charges that they, acting on behalf of the union, caused the breach].... Where the union has inflicted injury it alone must pay." Atkinson, 370 U.S. at 249, 82 S.Ct. at 1325.
Atkinson, however, left open the question of whether individual union officers could be liable if the claim were based on conduct that was not authorized by the union. In Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), the Court answered no:
[s]ection 301(b) by its terms prohibits a money judgment entered against a union from being enforced against individual union members ... It is a mistake to suppose that Congress thereby suggested by negative implication that employees should be held liable where their union is not liable for the strike ... Although lengthy and complex, the legislative history of § 301 clearly reveals Congress' intent to shield individual employees from liability for damages arising from their breach of the no-strike clause of a collective-bargaining agreement, whether or not the union participated in or authorized the illegality.
Complete Auto Transit, 451 U.S. at 407, 101 S.Ct. at 1840-41.
Because, in these cases, the Supreme Court has interpreted § 301 as a reaction to the Danbury Hatters case (in which individual union members, but not the union, were held liable), and held that "[i]t would be a mistake to suppose that Congress ... suggested by negative implication that employees should be held liable where their union is not liable ...," Complete Auto Transit, 451 U.S. at 407, 101 S.Ct. at 1841, Madden's argument that under § 301 individual union members may be held liable, if the Union is not, appears contrary to established law. Atkinson and Complete Auto Transit, however, are arguably distinguishable from this case. They involved an employer suing union officers for breach of a labor contract as opposed to a union member or officer suing union officers for breach of a union constitution.
The Second Circuit apparently has never reached the issue of whether individual union officers may be held liable for breach of a union constitution. In Shea v. McCarthy, 953 F.2d 29 (2d Cir.1992), however, although the plaintiff/union members sought only equitable relief, the Court suggested that equitable relief was all that was available to union members from individual union officers for violations of a union constitution. Addressing the issue of whether § 301 authorizes suits by union members against individual union officers alone (as opposed to jointly with the union), the Second Circuit stated generally that: "[b]ecause recovery in such suits would be equitable in nature only, there is little likelihood that permitting policing *713 in this manner would result in a plethora of trivial suits." Shea, 953 F.2d at 31 (emphasis added). In addition, after citing several lower court cases in support of its proposition that individual defendants may be subject to liability for violations of union constitutions, the Court held that "[t]o the extent that these cases deal with equitable relief, we agree with them." Shea, 953 F.2d at 32.
Other courts addressing the issue of an individual union officer's liability for alleged violations of a union constitution have held that Congress intended to shield individual union officers from liability, at least insofar as monetary relief was sought. For example, in Gordon v. Winpisinger, 581 F.Supp. 234 (E.D.N.Y.1984), union members brought an action against a union's president and the union itself for instituting disciplinary proceedings against them. Citing Complete Auto Transit, the Court held that under § 301 the union's president could not be held liable in his individual capacity for money damages. The union president could, however, be subject to claims for equitable relief. See also Building Material and Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500, 507-08 (9th Cir.1989); Operative Plasterers & Cement Masons International Association of the United States and Canada, AFL-CIO v. Benjamin, 776 F.Supp. 1360, 1366-67 (N.D.Ind.1991); International Brotherhood of Boilermakers v. Freeman, 683 F.Supp. 1190, 1191 (N.D.Ill.1988); Suwanchai v. International Brotherhood of Electrical Workers, Local 1973, 528 F.Supp. 851, 861-62 (D.N.H.1981); but see Guzman v. Bevona, 810 F.Supp. 509 (S.D.N.Y.1992).[6]
On the basis of this authority and the Second Circuit's indications in Shea, the individual Defendants' motion to dismiss the LMRA claims for monetary damages against them is granted.

3. Failure to Allege a Claim against Grogan

The individual Defendants also argue that because the complaint does not include any allegations regarding Grogan, it fails to state a claim against him. The basis for this motion is unclear. The complaint is no more specific with regard to Bernard or the International than it is with Grogan.
Paragraph 5 of the complaint states that "[d]efendant International, defendant Bernard and defendant Grogan are sometimes hereinafter collectively referred to as defendants." The complaint goes on to allege that the "defendants" removed Madden from his elected office, without providing him with written charges, time to prepare his defense or a full and fair hearing, and that the removal was done in reprisal for his statements disputing the "defendants'" claims for dues owed, in violation of the LMRDA and the LMRA. The complaint also alleges that the "defendants" own and publish "The Asbestos Worker Journal" in which they allegedly defamed Madden and that the actions of the "defendants" have caused him emotional distress.
Because the complaint alleges that Grogan removed Madden from office in violation of the LMRDA, published a letter defaming Madden and caused Madden emotional distress, the individual defendants' motion to dismiss the complaint as against Grogan for failure to state a claim is denied.
In conclusion, the individual Defendants' motion to dismiss for lack of personal jurisdiction is denied. The individual Defendants' motion to dismiss for failure to state a claim is granted as to the LMRA claims.
SO ORDERED.
NOTES
[1] CPLR § 302(a) provides, in relevant part: As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state....
[2] The individual Defendants also argue that the Court does not have personal jurisdiction under § 302(a)(2). Because the Court finds, however, that Madden has alleged facts, which, if true, satisfy the jurisdictional requirements of § 302(a)(1), the Court does not reach the question of whether it has personal jurisdiction under § 302(a)(2).
[3] Courts construing the "doing business" clause § 301 of New York's long-arm statute have held that the collection of dues from New York chapters and the enforcement of policies, decrees and orders incidental to management in the New York chapter constitute "business." See New York City Jaycees, Inc. v. United States Jaycees, Inc., 377 F.Supp. 481 (S.D.N.Y.1974); B.K. Bruce Lodge, Inc. v. Subcommittee of Management of Grand United Order of Odd Fellows in America, 208 A.D. 100, 203 N.Y.S. 149 (1st Dept. 1924); Doherty v. Moreschi, 187 Misc. 175, 59 N.Y.S.2d 542, 543 (Sup.Ct.1946). Although § 301's "doing business" clause requires a more systematic and widespread course of conduct than § 302's "transacts any business," there is no reason to believe that "business" in § 301 means anything different than "business" in § 302.
[4] Section 301(a) of the LMRA establishes federal jurisdiction over suits for a violation of a contract between a labor organization and an employer or between labor organizations. 29 U.S.C. § 185(a). Section 301(a) has also provided a cause of action for employees alleging breach of a union constitution and by-laws. See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 99, 112 S.Ct. 494, 499, 116 L.Ed.2d 419 (1991); Shea v. McCarthy, 953 F.2d 29 (2d Cir.1992). § 301(b) states, however, that "[a]ny money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(a).
[5] In the Danbury Hatters case, an antitrust treble damage action was brought against union members, including union officers and agents, to recover for the employer's losses in a nationwide, union-directed boycott of its hats. The union was not named as a party, nor was judgment entered against it. A large money judgment was entered instead against the individual defendants for participating in the plan, many of whom allegedly lost their homes as a consequence. Atkinson, 370 U.S. at 248, 82 S.Ct. at 1324.
[6] In Guzman, a union member brought an action against union officers under § 301 for breach of the union constitution. Without discussing Atkinson, Complete Auto Transit, or any other case on the issue, the Court held that § 301 does not bar a claim for damages against individual union officers when the union is not joined as a defendant. 810 F.Supp. at 512. Because Madden seeks monetary damages against both the union and the individual defendants, the case is distinguishable.