**Joseph LARRY**

v.

**PENN TRUCK AIDS, INC., Stanley Tamavich, Robert Link, Teamsters Local No. 312, Eastern Conference of Teamsters, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Edward J. Burke, John Diluzio, Domenick Maggi and Charles Gagnon.**

Civ. A. No. 80–3875.

United States District Court, E. D. Pennsylvania.

July 12, 1982.

---

Rudolph J. DiMassa, Philadelphia, Pa., for plaintiff, Joseph Larry.

Mark P. Muller, Freedman & Lorry, P. C., Philadelphia, Pa., for defendants Local 312, Burke and DiLuzio.

Francis M. Milone, Philadelphia, Pa., for defendants PTA, Link and Tamavich.

Jonathan G. Axelrod, Beins, Axelrod & Osborne, P. C., Washington, D. C., for defendant Eastern Conference of Teamsters.

Joseph E. Santucci, Jr., Washington, D. C., for defendant International Union.

## OPINION

LUONGO, Chief Judge.

In this action brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, plaintiff, Joseph Larry, asserts various claims arising out of an alleged violation of seniority rights guaran-

teed to him by a collective bargaining agreement entered into between defendant, Penn Truck Aids, Inc. (PTA), and defendant, Teamsters Local No. 312 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 312). Also named as defendants are: Edward Burke, the president of Local 312; John DiLuzio, the business agent of Local 312; Stanley Tamavich and Robert Link, employees of PTA; Dominick Maggi, the person who was given seniority over plaintiff; the Eastern Conference of Teamsters (Eastern Conference), and its agent Charles Gagnon; and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers (International). All defendants, with the exception of Maggi, have moved either to dismiss or for summary judgment.

As gleaned from the amended complaint, the facts relevant to all of the motions are as follows.[1] Defendant PTA is a labor broker which supplies truck drivers to businesses which do not employ their own drivers. The terms and conditions of PTA's relations with its employees are governed by the collective bargaining agreement it entered into with Local 312.[2] Plaintiff, a member of Local 312, was hired by PTA on July 21, 1977 and was assigned to PTA's casual work list made up of those PTA employees who were not assigned to work with one of PTA's customers on a regular basis. On September 8, 1977, PTA hired defendant Maggi, who was also assigned to the casual work list. On September 11, 1978 Maggi was given a permanent employment assignment with Eaton Corporation. On December 11, 1978, plaintiff was given a permanent assignment with Eaton Corporation. Although Larry contends that, under the

collective bargaining agreement, his earlier assignment to the casual list entitled him to the earlier assignment to Eaton's permanent list, he did not at that time file a grievance over the fact that Maggi was given the earlier permanent assignment.

In February, 1980, Larry filed a grievance with Local 312 contending that PTA violated his seniority rights under the collective bargaining agreement by giving to Maggi the earlier permanent assignment. In the first stage of the grievance process, under which the Local and PTA attempt to resolve the dispute amicably (Collective Bargaining Agreement ¶ (b)), Larry, represented by Local 312 through defendant DiLuzio, was successful and he was reinstated to a position of seniority over Maggi on Eaton's permanent assignment list. That action then prompted Maggi to file a grievance. Maggi's grievance was *not* settled at the first stage. It was heard by the Special Joint Committee, consisting of an equal number of union and employer representatives, which hears grievances which cannot be resolved by direct negotiations between the Local and the employer. Maggi was represented at the Special Joint Committee hearing by defendant Burke acting in place of DiLuzio, Local 312's regular hearing representative. The Special Joint Committee ruled in favor of Maggi[3] and, on June 2, 1980, ordered Maggi reinstated to priority on Eaton Corporation's permanent assignment list.

Under the collective bargaining agreement, a ruling by the Special Joint Committee is final and binding on all of the parties with no right of appeal. (Amended Complaint ¶ 9, Exhibit B at Art. 7 § 1(c)). Larry had not been notified that Maggi's griev-

---

1. Where a defendant has moved for summary judgment, I will consider undisputed facts which are not contained in the complaint. However, to avoid confusion, those facts will be identified only as they relate to the particular motion under discussion.

2. *See* Amended Complaint, Exhibit B.

3. The Special Joint Committee did not explain why it ruled in Maggi's favor. From the transcript of the June 2, 1980 hearing, which was

provided to the court after the instant motions were filed, it appears that the Special Joint Committee gave significant, if not conclusive, weight to the fact that Larry did not file a grievance within ten days of Maggi's permanent assignment to Eaton. Under the collective bargaining agreement, all grievances must be made known to the other party within ten days after "the reason for such grievance has occurred." (Collective Bargaining Agreement Art. 7 § 6).

ance was being heard by the Special Joint Committee and he was not represented at the hearing.

On June 13, 1980,[4] Larry was laid off by Eaton Corporation while Maggi, due to his position of priority over Larry on Eaton's permanent assignment list, remained in Eaton's employment. Larry then filed another grievance which was heard by the Special Joint Committee. At the hearing Tamavich, on behalf of PTA, "admitted *inter alia*, the September 11, 1978 assignment-in-error." The facts relating to plaintiff's lack of representation at the June 2 hearing were communicated to the Committee. (Amended Complaint ¶ 29). Nevertheless, on July 7, 1980, the Special Joint Committee ruled in favor of Maggi and against Larry, reaffirming the Committee's June 2 ruling according Maggi higher seniority.

Larry filed the original complaint in the instant case on October 7, 1980, naming PTA, Tamavich, Link, Local No. 312, Burke, DiLuzio and Maggi as defendants. On December 24, 1981, he amended the complaint to add Eastern Conference, International, and Gagnon as defendants and to clarify the allegations of his original complaint. The amended complaint, which incorporates parts of the original complaint by reference, asserts jurisdiction under § 301 of the Labor Management Act, 29 U.S.C. § 185, and alleges that PTA breached the collective bargaining agreement; that Local 312, Eastern Conference and International breached the duty of fair representation they owed to Larry; and, under a claim of pendent jurisdiction, that all of the individ-

ual defendants tortiously interfered with his contractual rights. Larry seeks a declaratory judgment that he is entitled to seniority over Maggi, an injunction requiring PTA to reinstate him to seniority over Maggi, and $10,000 in compensatory, and $50,000 in punitive damages from all defendants.

### I. *Penn Truck Aid's Motion to Dismiss and/or Summary Judgment*

PTA[5] moves to dismiss the complaint and/or for summary judgment on the ground that the claim is barred by the statute of limitations[6]. Because PTA relies on matters outside the pleadings, and because Larry had notice that PTA moved alternatively for summary judgment, I will consider PTA's motion as one for summary judgment pursuant to F.R.Civ.P. 56. *See* F.R.Civ.P. 12(b)(6).

Larry argues that PTA waived the affirmative defense of the bar of the statute of limitations by failing to raise it in its answer to the original complaint, and by failing to oppose the motion to amend the complaint. Larry has not cited any legal authority for his position but it is not necessary to consider it because its factual predicate, *i.e.*, that PTA did not plead the statute of limitations in its original answer, is simply incorrect. PTA's Answer to the original complaint clearly raised the statute of limitations as an affirmative defense. (Document 21, at ¶ 6). Further, PTA's failure to object to plaintiff's motion to amend does not warrant a finding of waiver. PTA informed the court and opposing counsel by letter dated December 1, 1981, that it did

---

**4.** There is a discrepancy in the record as to the date Larry was laid off. The complaint states June 13, 1980, while certain other documents list June 16, 1980. For the purposes of the instant motion, the actual date is immaterial.

**5.** PTA filed its motion along with Link and Tamavich. I will address the motion as it pertains to those individual defendants in Part III(c) of this opinion.

**6.** PTA also moves to dismiss the complaint and/or for summary judgment on the ground that Larry has failed to state a claim against Local 312 for breach of the duty of fair representation, a prerequisite to an action against Penn Truck Aids for breach of the collective

bargaining agreement. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981); *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). For reasons that will be more fully set forth when I address Local 312's motion to dismiss in Part II, *infra*, Larry has stated a claim against Local 312 for breach of the duty of fair representation. Because none of the material outside the pleadings submitted by PTA has any bearing on the fair representation claim, my resolution of Local 312's motion to dismiss is equally applicable to PTA's motion.

not oppose the motion to amend, but pointed out that the amended complaint suffered from several defects which would be better resolved by a motion for summary judgment. The instant motion, which refers to matters outside the pleadings, is such a motion. PTA, therefore, did not waive its right to raise the bar of the statute of limitations.

■ Turning to the merits of PTA's motion, it is settled that "the timeliness of a § 301 suit ... is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *United Auto Workers v. Hoosier Cardinal Corporation*, 383 U.S. 696, 704–705, 86 S.Ct. 1107, 1112–1113, 16 L.Ed.2d 192 (1966); *Service Employees International Union Local No. 36, AFL–CIO v. Office Center Services, Inc.*, 670 F.2d 404, 409 (3d Cir. 1982). In *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Court considered which state statute of limitations should be applied to a § 301 suit by an employee against his employer for breach of the collective bargaining agreement. As in the instant case, the issue in dispute in *Mitchell* had been submitted to a grievance proceeding which, under the collective bargaining agreement, was binding on all of the parties to the agreement. Reasoning that an employee cannot set aside the binding effect of the resolution of a grievance unless he can establish that the Union breached its duty of fair representation in processing the grievance, *see Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), the Court in *Mitchell* held that the employee's claim against his employer under § 301 was most analogous to an action to vacate an arbitration award, and

that the state statute of limitations applicable to such actions controlled.

■ *Mitchell*, decided in April 1981, is consistent with the position taken by the Third Circuit Court of Appeals a number of months earlier in *Liotta v. National Forge Company*, 629 F.2d 903 (3d Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981), that the three month statute of limitations contained in the Pennsylvania General Arbitration Act, Pa. Stat.Ann. tit. 5, § 173 (Purdon 1963) (repealed 1980), governed the timeliness of an employee's § 301 claim against his employer for breach of a collective bargaining agreement. In *Liotta* it was likewise claimed that an arbitration award deciding the issue in dispute was not binding because of the union's breach of the duty of fair representation. Accordingly, under both *Mitchell* and *Liotta*, I must apply the three month statute of limitations set forth in the Pennsylvania General Arbitration Act to plaintiff's claim against PTA in the instant case. *Sheeran v. M.A. Bruder & Sons, Inc.*, 524 F.Supp. 567, 571 n.3 (E.D.Pa.1981).[7] *See Fedor v. Hygrade Food Products*, 533 F.Supp. 269 at 272 (E.D.Pa.,1982).

I reject Larry's contention (based on Justice Stewart's concurrence in *Mitchell*) that the six month limitation period provided in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), should control the instant motion. Whatever merit there may be in that position, I agree with my colleagues, Judges Bechtle and Pollak, that the Third Circuit Court of Appeals' decision in *Liotta*[8] forecloses my adoption of it in the instant case. *See Sheeran v. M. A. Bruder & Sons, supra*, 524 F.Supp. at 571 & n.3; *Fedor v. Hygrade, supra*, 533 F.Supp. at 272.

---

7. The Pennsylvania General Arbitration Act, 5 P.S. § 1, was repealed when Pennsylvania adopted the Uniform Arbitration Act effective on December 5, 1980. 42 Pa.Cons.Stat.Ann. § 7314. Because the instant case was filed prior to the effective date of the Uniform Arbitration Act, the General Arbitration Act controls. *Sheeran v. M. A. Bruder & Sons, Inc.*, 524 F.Supp. 567 (E.D.Pa.1981).

8. In *Liotta* the court was not unaware of the argument supporting adoption of § 10(b) of the NLRA as the statute of limitations. Fifteen years earlier in *Falsetti v. Local Union No. 2026*, 355 F.2d 658, 661 (3d Cir. 1966), the court declined to consider whether § 10(b) should be applied to a hybrid § 301–breach of duty suit, pointing out that the issue of identifying the statute of limitations in § 301 suits was, at that time, before the Supreme Court in *Hoosier Cardinal*.

The starting point for the running of the statute of limitations in the instant case presents some difficulty. Larry contends that his complaint, filed October 7, 1980, is timely because the statute did not begin to run until July 7, 1980, the date the Special Joint Committee turned down the grievance filed on his behalf by Local 312. PTA, on the other hand, argues that the appropriate starting date is June 2, 1980, when the Special Joint Committee rendered its decision awarding Maggi seniority. PTA argues that the June 2, 1980 decision was a final resolution of the seniority dispute between Larry and Maggi and is, therefore, the arbitration award which Larry must set aside if he is to prevail against PTA. In support of its position PTA points to the provision of the collective bargaining agreement which forbids appeals from Special Joint Committee decisions, and the July 7, 1980 Special Joint Committee ruling rejecting the grievance filed on Larry's behalf on the ground that it was not properly before the Committee because the matter had been finally resolved on June 2.

■ Federal law determines when a federal cause of action accrues. *Antonioli v. Lehigh Coal and Navigation Company,* 451 F.2d 1171, 1175 (3d Cir. 1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972); *Butler v. Local Union 823,* 514 F.2d 442, 448–449 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). "A cause of action ordinarily accrues when 'the plaintiff could first have successfully maintained a suit on that cause of action.'" *Santos v. District Council of New York City,* 619 F.2d 963, 968–969 (2d Cir. 1980), *quoting Bell v. Aerodex, Inc.,* 473 F.2d 869, 873 (5th Cir. 1973). The *Mitchell* court characterized a claim such as the instant one as an action to vacate an arbitration award. From that, it would appear that the cause of action should accrue when the employee learned or should have learned that a final arbitration award adversely affecting his interests had been made. But this approach does not take into account that the aggrieved employee cannot bring a § 301 action to vacate an award unless he has reason to be-

lieve that it was the product of his union's breach of duty of fair representation. As the Court stated in *Mitchell,* the union's breach of duty is an "indispensible predicate" to the action against the employer. 451 U.S. at 62, 101 S.Ct. at 1564. Absent knowledge of the breach, an employee cannot bring suit. *See Santos v. District Council of New York City, supra,* 619 F.2d at 969.

■ The question here, therefore, is when should Larry have known that he was a victim of a final arbitration award attributable to his union's alleged breach of duty of fair representation. I agree with PTA that the June 2, 1980 award in favor of Maggi is the one that Larry must seek to set aside on the basis of his union's alleged breach of duty. The Special Joint Committee decision stated:

The panel in executive session, motion made, seconded and carried that based on the facts presented, the Committee rules that Don [*sic*] Maggi was not laid off in accordance with his customer's seniority.... Don [*sic*] Maggi shall be returned to the Eaton seniority list in his proper seniority order and Joseph C. Larry, Jr. will be placed on layoff and returned to the Penn Truck Aids, Inc. casual list. This decision will be implemented as soon as possible.

Thus the June 2, 1980 decision was clearly a final resolution of the seniority dispute between Larry and Maggi. Larry's argument that he cannot be bound by the award because he was not a party to the grievance misapprehends the grievance process as set forth in the collective bargaining agreement. Individuals complaining of employer actions are not parties to the grievance proceedings. The parties to the proceedings are the union and the employer. (*See* Collective Bargaining Agreement, Art. 7 § 1(d)). *See also Sheeran v. M. A. Bruder & Sons, Inc., supra,* 524 F.Supp. at 571. The undisputed facts in this record establish that Larry knew of the award, and had reason to believe that it was caused by his union's breach of duty, if any there was, by

June 18, 1980, at the latest. On that date DiLuzio filed a grievance on Larry's behalf taking issue with the Special Joint Committee's June 2, 1980 ruling in Maggi's favor.[9] Since Larry knew that he was neither present nor represented at the hearing on Maggi's grievance, he clearly had knowledge of the operative facts on June 18, 1980.

Notwithstanding that the accrual of Larry's cause of action can be fixed at a date prior to July 7, 1980, I cannot presently conclude that the complaint is barred by the statute of limitations because there is a material issue of fact as to whether there was a tolling of the statute. This arises from the union's submission of a grievance on plaintiff's behalf after June 13, 1980. The Special Joint Committee eventually ruled that, in light of its June 2 decision, this grievance was improperly filed.

PTA argues that the collective bargaining agreement categorically prohibited the filing of plaintiff's grievance. The agreement does expressly provide that there is no right to appeal an award of the Special Joint Committee, but the use of the term "appeal" denotes review by a higher tribunal. There is nothing in the agreement precluding either party from requesting reconsideration. It is reasonable to infer from the facts alleged in the complaint and the terms of the collective bargaining agreement, that the submission of the grievance was considered proper procedure by both PTA and Local 312. The union processed Larry's grievance, and it does not appear that PTA interposed a procedural defense to the submission of the grievance. There is further support for this inference in the allegation in the amended complaint that Tamavich, on behalf of PTA, informed the Special Joint Committee of facts establishing that the June 2, 1980 decision was error. (Amended Complaint ¶ 29).[10] Submission of a grievance pursuant to the collective bargaining agreement tolls the running of the statute of limitations.[11] *See Smart v. Ellis Trucking Co., Inc.*, 580 F.2d 215, 219, n.5 (6th Cir. 1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979); *cf. Butler v. Local Union 823, supra*, 514 F.2d at 449. Since Larry filed this action within three months of the July 7 decision, I cannot say as a matter of law that he slept on his rights.[12] There is a

---

9. At oral argument on June 7, 1982, I pointed out to the parties that they had not directed my attention to anything in the record that established that Larry knew of the June 2, 1980 award prior to July 7, 1980. In response to this observation, counsel for PTA submitted a letter later that day, referring me to the grievance information form which established that Larry knew of the June 2, 1980 award on June 18, 1980. (Document No. 53). The grievance information form was submitted to the court on May 17, 1982 as part of Eastern Conference's answers to interrogatories. (Document No. 49). Although the grievance information form was made part of the record after the instant motions were filed, I have considered it in resolving these motions because it was submitted prior to oral argument. *See* F.R.Civ.P. 56(c). Moreover, my consideration of this document does not prejudice Larry. PTA's motion, which was to dismiss and/or for summary judgment, put Larry on notice that the procedures set forth in Rule 56 would govern. Despite that notice, Larry did not file a counter-affidavit. Further, after receiving PTA's letter on July 7, 1980, I afforded Larry the opportunity to respond. In his response Larry did not point to anything in the record that created a factual dispute as to the date that he learned of the

June 2, 1980 award. (Document No. 52). Instead, Larry incorrectly asserted that he had no obligation to counter the factual material set forth by PTA.

10. Additional support for this inference is provided by the transcript of the July 7, 1980 Special Joint Committee hearing in which DiLuzio strenuously objected to the Committee's assertion that the June 2, 1980 award barred Larry's claim. Review of the transcript shows that PTA did not make a procedural objection at the hearing.

11. Thus, I do not disagree with the Special Joint Committee's decision that the June 2 award was final. Rather, it is my view that by processing a grievance on plaintiff's behalf after that decision PTA and Local 312 may have misled plaintiff into believing that he had a right to seek reconsideration.

12. This case is unlike those in which employees argued that the statute of limitations was tolled by their taking actions completely outside the framework of the collective bargaining agreement. *See, e.g., Falsetti v. Local Union No. 2026*, 355 F.2d 658, 662 (3d Cir. 1962) (filing of

material issue of fact as to tolling. PTA's motion for summary judgment will be denied without prejudice to resubmission on an expanded record.[13]

## II. The Union Defendants

### A. Local 312

Local 312 moves to dismiss on the ground that Larry has failed to state a claim against it for breach of the duty of fair representation. In addition Local 312 moves to strike plaintiff's demand for punitive damages. I will consider first the fair representation claim.[14]

#### (1) Fair Representation

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Allegations of negligent conduct on the part of the union are insufficient to state a claim for breach of duty, *see Riley v. Letter Carriers Local No. 380*, 668 F.2d 224 (3d Cir. 1981), and it is incumbent on plaintiff to allege that the union acted arbitrarily or with a bad faith motive. *Id.* at 228; *Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 961 (3d Cir. 1980). Although a claim that a union violated its duty of fair representation should be dismissed pursuant to F.R.Civ.P. 12(b)(6) only if it appears beyond doubt that plaintiff can prove no set of facts entitling him to relief, *Czosek v. O'Mara*, 397 U.S. 25, 27, 90 S.Ct. 770, 772, 25 L.Ed.2d 21 (1970); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), conclusory allegations of bad faith do not suffice and

plaintiff must allege facts "from which the presence of hostile discrimination could at least be inferred." *Hubicki v. ACF Industries, Incorporated*, 484 F.2d 519, 526 (3d Cir. 1973).

The complaint charges that Local 312's breach of the duty of fair representation consisted of its alleged failure to represent Larry's interests in the June 2, 1980 Special Joint Committee hearing at which Maggi was awarded seniority over Larry. The complaint, however, contains no specific allegation that Local 312 acted arbitrarily or in bad faith at this hearing. Since the Third Circuit Court of Appeals has stated that conclusory allegations of bad faith are insufficient to state a claim, *id.*, Larry's failure to use those specific terms in his complaint is not a fatal defect, and I have reviewed the allegations of the complaint to determine whether Larry has alleged facts which would support a charge of bad faith or arbitrary action by Local 312. After such review I conclude that the complaint against Local 312 cannot properly be dismissed at this time.

I need not decide whether, standing alone, defendant Burke's failure to present evidence pertaining to Larry's seniority status during the June 2 hearing supports an inference that Local 312 breached its duty of fair representation, *see, e.g., Fox v. Mitchell Transport, Inc.*, 506 F.Supp. 1346, 1354 (D.Md.1981), because the complaint also alleges that the seniority dispute had been resolved correctly in Larry's favor in an earlier grievance proceeding between Local 312 (represented by DiLuzio) and PTA. Thus it may be inferred that Burke, as president of Local 312 and DiLuzio's

---

state court suit does not toll § 301 statute of limitations); *Plenskofski v. Spector Motor Freight System*, slip op. No. 80–3006 (E.D.Pa., March 19, 1981) (filing of unfair labor practice charge did not toll § 301 statute of limitations).

**13.** In their submissions to date, neither Larry nor PTA has expressly considered the issue of tolling. Rather, they have considered the submission of the July 7, 1980 grievance in the context of when plaintiff's cause of action accrued. If, after conducting discovery, PTA chooses to resubmit its motion, it would be

helpful for the parties to address more concretely the issue of tolling.

**14.** Local 312 moved for judgment on the pleadings on statute of limitations grounds in its response to plaintiff's original complaint. It did not, however, reassert this defense in its motion to dismiss the amended complaint. In any event, in light of the disposition of the motion by PTA, Local 312 would not presently be entitled to dismissal on statute of limitations grounds.

superior, knew that the seniority dispute had been resolved previously in Larry's favor and that, under the collective bargaining agreement, Larry was entitled to priority over Maggi on Eaton's permanent assignment list. If Burke possessed such knowledge, his argument at the June 2, 1980 hearing resolving the dispute between Maggi and Larry, that Maggi was entitled to priority over Larry, was arguably made in total disregard of Larry's interests, and supports a finding that Local 312 acted in an arbitrary, perfunctory, or bad faith manner toward Larry. *See Smith v. Hussmann Refrigerator Co.*, 619 F.2d 1229, 1237 (8th Cir. 1980) (en banc); *Butler v. Local Union No. 823, supra,* 514 F.2d at 455. Further support for an inference of bad faith or arbitrary behavior on the part of Burke is in Larry's allegation that he was not notified that Maggi's grievance was to be heard by the Special Joint Committee. This was a seniority dispute solely between Larry and Maggi, and Local 312's failure to notify Larry, who believed that the matter had been resolved in his favor, that his interests were at stake at least supports an inference that Local 312 acted in an arbitrary or perfunctory manner toward Larry and may also support an inference of bad faith. As the court stated in *Smith* "when the employee is prejudiced by not having notice of the hearing because the union inadequately prepared or presented his or her interests, a breach of the duty of fair representation has been demonstrated." 619 F.2d at 1241. *See Thompson v. International Association of Machinists,* 258 F.Supp. 235, 239 (E.D.Va. 1966). *Cf. Local Union 1110, UMW v. Consolidation Coal Company,* 531 F.Supp. 734, 736 (N.D.W.Va.1982) ("right of an individual grievant to be present for the prosecution of his grievance is a basic fundamental right secured by the national labor laws"). Accordingly, Larry's complaint cannot be dismissed on a Rule 12(b)(6) motion. Local 312's motion will be denied.

#### (2) *Punitive Damages*

Local 312's motion to strike from the amended complaint the demand for punitive damages has more merit and it will be granted. Punitive damages are not recoverable from a union for breach of the duty of fair representation. *Wells v. Southern Airways, Inc.,* 616 F.2d 107, 109 (5th Cir.), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 78 (1980); *Sims v. NVF Corporation,* slip op. No. 81–3494 at 9 (E.D.Pa., Jan. 8, 1982); *Dian v. United Steelworkers of America,* 486 F.Supp. 700, 706 (E.D.Pa.1980). *See International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979).

### B. *Eastern Conference and International*

Larry charges both Eastern Conference and International with breach of the duty of fair representation. Eastern Conference moves to dismiss, and International moves for summary judgment, raising, for the most part, identical legal theories.

#### (1) *Statute of Limitations*

The principal common argument[15] that these defendants raise is that the complaint against them is untimely in light of *Mitchell, supra,* and *Liotta, supra.* They correctly point out that the latest date that Larry's cause of action could have accrued was on July 7, 1980. Since neither of these parties was joined as a defendant until the filing of the amended complaint on December 24, 1980, more than five months after the July 7 award, they argue that the claims against them are time barred. Larry responds to this argument by contending that a factual issue exists as to whether the amended complaint relates back to the date of the original complaint and that, therefore, the complaint cannot presently be dismissed on statute of limitations grounds. *See F.R. Civ.P.* 15(c).

At the outset it should be pointed out that Larry does not argue, in opposition

---

15. Both International and Eastern Conference also move to strike plaintiff's demand for punitive damages. The claim against these defendants stands on the same footing as the claim against Local 312 and the motion to strike will be granted.

to the instant motion, that his claims against Eastern Conference and International are governed by a different limitations period than his claim against the employer. In earlier proceedings in this case, however, he did make such an argument. I will, therefore, briefly set forth my views on this issue. By the time they were decided by the Supreme Court and Court of Appeals, respectively, both *Mitchell* and *Liotta* involved only the employee's claim against his employer. Since *Mitchell*, numerous cases have considered whether the same statute of limitations should apply to an employee's claim against his employer for breach of the collective bargaining agreement and to his claim against the union for breach of the duty of fair representation. This issue has been addressed at length by other members of this court with differing results. *See, e.g., Fedor v. Hygrade Food Products*, 533 F.Supp. 269 (E.D. Pa.1982) (Bechtle, J.) (same period applies); *Fogel v. International Brotherhood of Teamsters, Local No. 773*, 531 F.Supp. 483 (E.D.Pa.1982) (Troutman, J.) (same period applies); *Sims v. NVF Corporation*, slip op. No. 81–3494 (E.D.Pa., Jan. 8, 1982) (Van-Artsdalen, J.) (different periods govern the claims). *See also Sheeran v. M. A. Bruder & Sons, Inc., supra*, 524 F.Supp. at 570–572 (court applied same period to both claims without discussion). Although there is authority holding that different limitation periods apply to the claims,[16] I agree with those courts which have concluded that the Supreme Court's reasoning in *Mitchell* requires the application of the same period to both claims.[17] Here, that period is three months. Therefore, unless the amended complaint joining Eastern Conference and International as parties relates back to the date of the original complaint, Eastern Conference's and International's motions must be granted.

◼ Whether an amendment adding parties relates back to the date of the original pleading is governed by F.R.Civ.P. 15(c) which provides in pertinent part:

(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

In order for an amendment to relate back all three conditions of the rule must be

---

**16.** *See, e.g., United Parcel Service, Inc. v. Mitchell, supra*, 451 U.S. at 71–76, 101 S.Ct. at 1568–1570 (Stevens, J., concurring in part, dissenting in part) (while arguing for different limitations periods, Justice Stevens acknowledged that the majority opinion could be construed as requiring application of the same period to both claims); *Flowers v. Local No. 2602, United Steel Workers of America*, 671 F.2d 87, 109 LRRM 2805 (2d Cir. 1982); *Sims v. NVF Corporation, supra.*

**17.** *See, e.g., Singer v. Flying Tiger Line, Inc.*, 652 F.2d 1349, 1353 (9th Cir. 1981); *Fedor v. Hygrade Food Products Corporation, supra*, 533 F.Supp. 483; *Fogel v. International Brotherhood of Teamsters, Local No. 773, supra*, 531 F.Supp. 483; *Delcostello v. International Brotherhood of Teamsters*, 524 F.Supp. 721, 724–25

(D.Md.1981), *aff'd mem.*, 679 F.2d 879 (4th Cir. 1982); *Kikos v. International Brotherhood of Teamsters*, slip op. No. 78–70521 (E.D.Mich., Oct. 19, 1981); *Suwanchai v. International Brotherhood of Electrical Workers*, 528 F.Supp. 851, 861 (D.N.H.1981). *Cf. United Parcel Service v. Mitchell, supra*, 451 U.S. at 65–71, 101 S.Ct. at 1565–1568 (Stewart, J., concurring) (Justice Stewart, while arguing for the adoption of § 10(b) of the NLRA as the statute of limitations for both claims, agreed that the claims against both parties were "inextricably interdependent"); *Butler v. Local Union 823, supra*, 514 F.2d at 448 (pre *Mitchell* case holding that interdependence of § 301 and breach of duty claims required application of same statute of limitations).

satisfied. *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174 (3d Cir. 1977). In the instant case there is no dispute that the claims against International and Eastern Conference arose out of the same transaction as the claim in the original complaint. The parties, however, disagree as to whether the remaining conditions of the rule have been satisfied.

■ Considering first the requirement of § 15(c)(1), *i.e.*, whether International and Eastern Conference, "within the period provided by law for commencing the action against [them] . . . received such notice of the action that [they] will not be prejudiced in maintaining [their] defense on the merits," it is abundantly clear that the complaint against International cannot relate back. In support of its motion for summary judgment, International submitted an affidavit by J. Joseph Cotter, the Administrative Assistant to the General President of International, which establishes that International neither knew nor had reason to know of the existence of the action filed by Larry prior to the service of the amended complaint. Although Larry argues that International could have known, he has not pointed to anything in the record contradicting the Cotter affidavit. Since a party may not solely rely on his pleadings in opposing a motion for summary judgment supported by affidavits, International's motion will be granted. F.R.Civ.P. 56(e).

Eastern Conference, however, presents different considerations. Unlike International, which moved for summary judgment, Eastern Conference has moved to dismiss pursuant to Rule 12 and has not submitted any factual material in support of its position. For the purpose of determining whether Rule 15(c)(1) has been satisfied, I will accept Larry's contention that notice of the action to Local 312 constituted notice to Eastern Conference. Review of the docket entries in this case establishes that the complaint was filed on October 7, 1980, but was not served on Local 312 until November 3, 1980, which was after the statute had run. Thus, even accepting plaintiff's argument that Eastern Conference knew when Local 312 knew, it is likely that neither Local 312 nor Eastern Conference knew of the action until process was served, *i.e.*, after the time for commencing the action had run, and, therefore, it is unlikely that plaintiff can satisfy the condition of Rule 15(c)(1). *See, e.g., Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980); *Archuleta v. Duffy's, Inc.*, 471 F.2d 33, 35 (10th Cir. 1973); *Simmons v. Fenton*, 480 F.2d 133, 136–137 (7th Cir. 1973); *Tretter v. Johns-Manville Corporation*, 88 F.R.D. 329, 332 (E.D.Mo.1980); *Magno v. Canadian Pacific Ltd.*, 84 F.R.D. 414, 415 (D.Mass.1979); *Dixon v. Universal Atlas Cement Division*, 437 F.Supp. 1071, 1073 (W.D.Pa.1977); *Munetz v. Eaton Yale and Towne, Inc.*, 57 F.R.D. 476, 477, 480 (E.D.Pa.1973). But see *Ingram v. Kumar*, 585 F.2d 566, 572 (2d Cir. 1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *Kirk v. Cronvich*, 629 F.2d 404, 408 (5th Cir. 1980); *Ratcliffe v. Insurance Co. of North America*, 482 F.Supp. 759, 763 (E.D.Pa.1980).[18] But because this issue, as it pertains to Eastern Conference, is before me on a motion to dismiss, I cannot so conclude with the requisite degree of certainty to dismiss the complaint. Under Rule 15(c)(1) formal notice

---

18. A split of authority has developed as to whether a party joined by an amendment has to have knowledge of the action prior to the expiration of the limitations period or whether the party must learn of the action within the reasonable time allowed for service of process under the federal rules. *Compare Simmons v. Fenton*, 480 F.2d 133 (7th Cir. 1973) (knowledge within limitations period) *with Ingram v. Kumar*, 585 F.2d 566 (2d Cir. 1978) (knowledge within period allowed for service). The courts opting for the Second Circuit rule reason that if the party had been properly named in the original complaint, it is altogether likely that he would not have learned of the action until service of process which, under the federal rules, could be after the expiration of the statute of limitations. Whatever merit this approach may have in the situation where there has simply been a misnomer in the original complaint and the correct party knew of the misnomer (*see Ratcliffe v. Insurance Co. of North American, supra*), application of the approach to the situation where an entirely new party is joined results in a judicial extension of the statute of limitations which, in my view, is beyond the proper role of the courts.

of an action is unnecessary. *See, e.g., Kirk v. Cronvich,* 629 F.2d 404, 407 (5th Cir. 1980); *Taliferro v. Costello,* 467 F.Supp. 33, 35 (E.D.Pa.1979). It is possible that Local 312, and, under plaintiff's assumption, Eastern Conference, was aware of the this action before being served with process. Knowledge of the action may have been communicated to Local 312 on the date the complaint was filed. On a motion to dismiss I cannot foreclose that possibility and cannot conclude that Rule 15(c)(1) has not been satisfied as to Eastern Conference.

■ I am able to conclude, however, that the further condition in Rule 15(c)(2), that Eastern Conference "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [it]" has not been satisfied.[19] The purpose of Rule 15(c)(2) is to ensure that the joined defendant knew or should have known from the original complaint that its joinder in the action was a distinct possibility. *See Ratcliffe v. Insurance Co. of North America, supra,* 482 F.Supp. at 763; *Taliferro v. Costello, supra,* 467 F.Supp. at 36. Nothing in the original complaint hints that Larry intended to state a claim against Eastern Conference. Significantly, no mention is made of Eastern Conference or its representative Charles Gagnon in the original complaint. It is also significant that, in the memorandum in support of his motion to amend the complaint, Larry did not claim that, when he filed the original complaint, he did not know that Local 312, Eastern Conference and International were distinct, albeit related, legal entities, nor did he claim that Eastern Conference should have known that it was likely to be sued. Accordingly, nothing in this record indicates that Eastern Conference should have known that its joinder in this action was a "distinct possibility". I conclude, therefore, that the provisions of Rule 15(c)(2) have not been satisfied as to that defendant. Accordingly, the amended complaint joining

Eastern Conference and International does not relate back, and plaintiff's complaint against these defendants is untimely.

#### (2) *Fair Representation*

■ While my resolution of the statute of limitations issue makes it unnecessary to address the remaining issues raised by Eastern Conference and International, I will briefly discuss one of them. Larry invoked jurisdiction pursuant to § 301, but he does not claim that Eastern Conference or International breached the collective bargaining agreement. His sole claim against these defendants is that they breached the duty of fair representation owed to him. In *Teamsters Local Union No. 30 v. Helms Express, Inc.,* 591 F.2d 211, 217 (3d Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979), the court stated:

> [T]he duty of fair representation is implied from the congressional grant of exclusive recognition accorded the labor organization selected by a majority of the employees in an appropriate bargaining unit. 29 U.S.C. § 159(a). The duty of fair representation imposes on the statutory representative a duty to serve the interest of all bargaining unit employees without hostility to any. *Steele v. Louisville & Nashville Railroad,* 323 U.S. 192 [65 S.Ct. 226, 89 L.Ed. 173] ... (1944).

Accordingly, the court concluded that only the employee's statutory representative owed the employees a duty of fair representation. *See also Baker v. Newspaper & Graphic Communications Union,* 628 F.2d 156, 165 (D.C.Cir.1980). In the instant case the collective bargaining agreement attached to the amended complaint establishes that Local 312, and not International or Eastern Conference, was the statutory representative of the employees. (*See* Agreement, Art. 2, § 1(a)). Therefore, neither Eastern Conference nor International owed plaintiff a duty of fair representation.

I am not persuaded by Larry's argument that his conclusory allegation that Local 312

---

**19.** As with 15(c)(1), International's uncontroverted affidavit requires that I conclude that

15(c)(2) has not been satisfied.

was an agent and employee of International and Eastern Conference precludes the granting of the motions. The only claim specifically made in the amended complaint against International and Eastern Conference is that they breached the duty of fair representation, and as noted, they owed no such duty. However, despite the fact that Larry's counsel only claimed breach of duty, I have construed the amended complaint liberally to determine if Larry's allegation of agency cures the deficiency in the pleadings.

Because International and Eastern Conference are not parties to the collective bargaining agreement and do not owe a duty of fair representation, Larry's agency claim must be considered as a claim that International and Eastern Conference either directed or induced Local 312's breach. *See Wilkes-Barre Publishing Company v. Newspaper Guild*, 647 F.2d 372, 382 (3d Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). Larry concedes as much when he agrees that Regional and International affiliates are not *per se* liable for the acts of local unions. (Document No. 39 at 3–4). Thus, Larry does not seek to impose agency liability under traditional theories of respondeat superior. As Larry explains, he is entitled to prove "the existence of a *de facto* agency relationship evidenced by a concert of action among the defendants." (*Id.*) Accordingly, Larry's claim against Eastern Conference and International must be considered as some sort of conspiracy claim. The uncontroverted factual material submitted by International establishes that there was no concert of action between it and Local 312 vis-a-vis this cause of action, and International is entitled to summary judgment. Insofar as Eastern Conference is concerned, the law of this circuit requires that claims which seek to impose liability on the basis of conspiracy or concert of action be pled with specificity. *See Black & Yates v. Mahogany Association*, 129 F.2d 227, 231–232 (3d Cir. 1941), *cert. denied*, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942); *Weiner v. Bank of King of Prussia*, 358 F.Supp. 684, 702 (E.D.Pa. 1973); 2A Moore's Federal Practice ¶ 8.17[5] (2d ed. 1980). *Cf. Hubicki v. ACF Industries, Incorporated, supra*, 484 F.2d at 526.[20] Larry's complaint, which contains only conclusory allegations, falls far short of this standard. Larry, therefore, has not stated a claim against Eastern Conference for either breaching the duty of fair representation or conspiring to breach the duty of fair representation.[21] Thus, Eastern Conference's motion to dismiss and International's motion for summary judgment will be granted both on the grounds that the complaint is barred by the statute of limitations and that plaintiff has failed to state a claim.

### III. *The Individual Defendants*

Larry contends that Burke, DiLuzio, Link, Tamavich and Maggi tortiously interfered with his contractual rights. He requests that this court exercise pendent jurisdiction over those claims. (Amended Complaint ¶ 12). All of the above named defendants, with the exception of Maggi, move to dismiss or for summary judgment. Before I address each motion separately, I must consider an issue common to all of the individual defendants, *i.e.*, whether there is subject matter jurisdiction over the claims against them.

From the amended complaint it is apparent that the claims Larry seeks to assert against the individual defendants are state law claims for tortious interference with contractual relations. These "pendent state law claim[s] . . . can be entertained

---

20. To the extent that *Donahue v. L.C.L. Transit Co.*, 492 F.Supp. 288, 291 (W.D.Wis.1980), holds that conclusory allegations of agency state a claim against Regional and International affiliates of local unions for breach of the duty of fair representation, I respectfully disagree.

21. In addition, unlike the claim against Local 312, there are no factual allegations in the amended complaint from which it could be inferred that either Eastern Conference or International acted with the requisite degree of arbitrariness or bad faith to state a claim for breach of the duty of fair representation.

only if the complaint alleges some other non-frivolous independent basis for district court jurisdiction over" these defendants. *Wilkes-Barre Publishing Company v. Newspaper Guild, supra,* 647 F.2d at 376 (citing cases).

■ Relying on *Wilkes-Barre,* Larry contends that § 301 is an independent source of federal jurisdiction over the claims against the individuals which supports the exercise of pendent jurisdiction over the state law claims. Insofar as Larry argues that § 301 provides jurisdiction over the individual defendants, he is correct. "[A] claim of tortious interference with a labor contract is one arising under federal common law over which the district court has jurisdiction. 29 U.S.C. § 185(a); 28 U.S.C. §§ 1331, 1337." *Wilkes-Barre, supra,* 647 F.2d at 381.[22] Cf. *Kerry Coal Co. v. UMW,* 637 F.2d 957 (3d Cir.), cert. denied, 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981). Larry's reliance on § 301 as a federal jurisdictional predicate for the exercise of pendent jurisdiction over state law tortious interference claims, however, is incorrect.[23] Part and parcel of the Court of Appeals' holding in *Wilkes-Barre,* that tortious interference claims fall within the district court's § 301 jurisdiction, was its conclusion that § 301 preempted state law causes of action for tortious interference with labor contracts. *Id.* at 380–381. Thus, in the instant case, Larry is unable to state a claim under state law over which this court could exercise its pendent jurisdiction. The sole claim Larry can make against the individual defendants in the instant case is a federal common law claim for tortious interference with a labor contract under § 301. Having so identified Larry's claim I now turn to the motions filed by the individual defendants.

### A. *Burke and DiLuzio*

Burke is the president of Local 312 who represented Maggi in the June 2, 1980 hearing before the Special Joint Committee, and DiLuzio is Local 312's business agent who normally serves as the hearing representative for Local 312's members before the Special Joint Committee. They move to dismiss the complaint for failure to state a claim. F.R.Civ.P. 12(b)(6).

■ Individual union officers are not subject to liability for damages under § 301 for actions taken in representing their constituents. *See, e.g., Williams v. Pacific Maritime Association,* 421 F.2d 1287, 1289 (9th Cir. 1970); *Suwanchai v. International Brotherhood of Electrical Workers,* 528 F.Supp. 851, 862 (D.N.H.1981); *Plenskofski v. Spector Freight System, supra,* slip op. at 8; *Hetrick v. Aluminum Workers International Union,* 478 F.Supp. 17, 18 (E.D.Pa. 1979). *See also* 29 U.S.C. § 185(b); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Wilkes-Barre Publishing Co. v. Newspaper Guild, supra,* 647 F.2d at 377. The complaint against Burke and DiLuzio alleging acts committed by them in their role as union representatives, must be dismissed.[24]

### B. *Gagnon*

Charles Gagnon is the representative of Eastern Conference who was a member of

---

22. In *Loss v. Blankenship,* 673 F.2d 942 (7th Cir. 1982), the Seventh Circuit Court of Appeals expressly disagreed with the holding in *Wilkes-Barre* that claims against non-parties to the collective bargaining agreement for tortious interference with a labor contract fall within the district courts § 301 jurisdiction. *Id.* n.6. Of course I must apply the law as determined by the Third Circuit Court of Appeals.

23. Section 301 is the only apparent independent federal jurisdictional basis for Larry's complaint. The complaint is devoid of any allegations establishing jurisdiction on the basis of diversity of citizenship.

24. I need not consider Larry's argument that Burke and DiLuzio are proper defendants for the injunctive relief Larry seeks. Review of the amended complaint reveals that Larry specifically seeks injunctive relief solely from PTA. (Amended Complaint, Prayer for Relief ¶ 34(b)). Further, Larry has set forth no reasons why the presence of Burke and DiLuzio is necessary for this court to grant him the injunctive relief he seeks, an order directing PTA to reinstate Larry to a position of seniority over Maggi.

the Special Joint Committee that ruled against plaintiff on June 2 and July 7, 1980. He is also charged with the other individual defendants with having tortiously interfered with Larry's contractual relations. Gagnon moves to dismiss on several legal theories.

### (1) *Immunity*

Gagnon contends that he is entitled to arbitral immunity for any actions taken by him as a member of the Special Joint Committee. Larry does not dispute that the Special Joint Committee, as the vehicle of dispute resolution chosen by the parties to the collective bargaining agreement, is considered to be an arbitration panel under § 301. *Teamsters Local Union No. 30 v. Helms Express, Inc., supra,* 591 F.2d at 216; *Yates v. Yellow Freight System,* 501 F.Supp. 101, 105 (S.D.Ohio 1980). Nor does Larry dispute that a member of an arbitration panel is " 'clothed with an immunity, analogous to judicial immunity, against actions brought by either of the parties arising out of his performance of his ... duties.' " *Cahn v. International Ladies' Garment Union,* 311 F.2d 113, 115 (3d Cir. 1962) (per curiam), quoting *Cooper v. O'Connor,* 99 F.2d 135, 141 (D.C.Cir.1938); *Yates v. Yellow Freight System,* 501 F.Supp. 101, 105 (S.D.Ohio 1980); *Hill v. Aro Corporation,* 263 F.Supp. 324 (N.D.Ohio 1967). *See Raitport v. Provident National Bank,* 451 F.Supp. 522, 527 (E.D.Pa.1978).

■■■ Without citing any authority, Larry argues that he is entitled to prove that Gagnon acted in concert with others to deprive Larry of his contractual rights and, if he can so prove, Gagnon is not entitled to immunity (Document No. 39 at 6). I disagree. The allegations of the amended complaint against Gagnon plainly relate to actions taken in Gagnon's role as a member of the Special Joint Committee. Larry does not contend that any actions taken by Gagnon were outside his jurisdiction as an arbitrator. It is clear that judicial immunity extends to all acts done by a judge, whether proper or improper, unless he acted in "the clear absence of jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099,

1105, 55 L.Ed.2d 331 (1978). The same rule applies to arbitral immunity. *See, e.g., Raitport v. Provident National Bank, supra,* 451 F.Supp. at 527. Thus, since the amended complaint contains no factual allegations from which it could be inferred that Gagnon acted outside his jurisdiction as an arbitrator, he is entitled to immunity.

### (2) *Statute of Limitations*

In addition to the bar of arbitral immunity I am also persuaded by Gagnon's argument that the complaint against him is barred by the statute of limitations.

■■■ At the outset I note that, because plaintiff's claim is a federal common law tortious interference claim under § 301, I must apply the analogous state statute of limitations. In categorizing the claim, the rationale used by the court in *Wilkes-Barre* to extend § 301 jurisdiction to encompass federal common law claims of tortious interference with labor contracts leads to the conclusion that such claims must, in the instant factual context, be analogized to actions to vacate arbitration awards. In *Wilkes-Barre,* the court extended § 301 to reach tortious interference claims because "section 301(a) ... reaches not only suits on labor contracts, but suits seeking remedies *for violation* of such contracts." 647 F.2d at 380 (emphasis in original). According to the court, a claim of tortious interference with a labor contract was such a claim because

> [a]n *essential element of the cause of action, whether injunctive relief or damages is sought, is a violation of the collective bargaining agreement.* The relief sought is to recover for or prevent that violation. The label attached to the remedy as tort or contract is not dispositive of the scope of federal common law which under section 301(a) it is our responsibility to create.

*Id.* at 381 (emphasis supplied).

In the instant case, Larry contends that the breach of the collective bargaining agreement was Maggi's earlier assignment to Eaton's permanent list. The June 2,

1980 award of the Special Joint Committee, *i.e.*, that Maggi was entitled to priority over Larry in Eaton's permanent assignment list, however, bars Larry from proving that breach of the collective bargaining agreement unless he can first set aside the June 2 award by showing that his union breached its duty of fair representation. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Accordingly, regardless how Larry labels his claim, the Special Joint Committee award is a barrier which he must hurdle before he can obtain the relief he seeks from anyone for inducing that breach. Thus, like the claim against PTA for breach of the collective bargaining agreement (*see* Part I *supra*) and the claim against the unions for breach of the duty of fair representation (*see* Part IIB(1) *supra*), Larry's claim against Gagnon for tortious interference with the agreement must, for statute of limitations purposes, be analogized to an action to vacate an arbitration award. *See United Parcel Service, Inc. v. Mitchell, supra.*

Gagnon's statute of limitations argument is the same as Eastern Conference's; that he was not joined as a party until the filing of the amended complaint, which was more than two months after the three month statute had run. Again, Larry argues that the amended complaint relates back. He does not suggest that the Rule 15(c) issue, as it pertains to Gagnon, involves different considerations than it did as to Eastern Conference, and I perceive no basis in this record for making a distinction. Thus, as discussed in Part IIB(1), *supra*, the original complaint failed to put Gagnon on notice that there was a distinct possibility that a claim would be made against him. Accordingly, the amended complaint does not relate back under F.R.Civ.P. 15(c)(2) and it must be dismissed as untimely as to Gagnon.

Since I conclude that Gagnon is entitled to arbitral immunity and that the complaint against him is barred by the statute of limitations, there is no need to address the remaining arguments he raises.

### C. *Link and Tamavich*

Stanley Link is PTA's branch manager and Robert Link is a supervisory employee of that company. Both were named as defendants in the original complaint filed October 7, 1980. They now move to dismiss or for summary judgment solely on the ground that the complaint against them is barred by the statute of limitations.

As with the claim against Gagnon (*see* Part IIIB(2), *supra*), the timeliness of the § 301 claim against Link and Tamavich for tortious interference with contractual relations is governed by the three month statute of limitations contained in the Pennsylvania General Arbitration Act. Link and Tamavich do not contend that the amended complaint does not relate back as to them. Their position is that the original complaint, in which they were named as defendants, was untimely.[25]

The argument of Link and Tamavich in this regard stands on the same footing as that of their employer, PTA, which made the same argument. As discussed in Part I, *supra*, there are factual issues as to whether the statute of limitations was tolled. Accordingly, their motions will be denied.

---

**25.** Link and Tamavich do not contend that the claim for tortious interference, which was not stated until the filing of the amended complaint, does not relate back. Assuming that the original complaint was timely filed, it is clear that Link and Tamavich had sufficient notice of the facts underlying the tortious interference claim so that the prerequisites of Rule 15 would be satisfied and the claim would relate back.