Evelyn SHOOP, Suzette Shoop, and Brenda Webster, Plaintiffs,

v.

DAUPHIN COUNTY, et al., Defendants.

Civ. A. No. 3:CV–89–1498.

United States District Court, M.D. Pennsylvania.

April 11, 1990.

John D. Briggs, Lancaster, Pa., Mark Lane, Washington, D.C., William E. Haggerty, Morgan, Hallgren, Crosswell & Kane, P.C., Lancaster, Pa., for plaintiffs.

R. James Reynolds, Jr., Foulkrod, Reynolds & Havas, Rolf E. Kroll, Craig A. Stone, Mette, Evans & Woodside, Timothy Andrew Hoy, Eckert, Seamans, Cherin & Mellott, Michael L. Harvey, Office of Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

Before the court is the motion and accompanying brief of defendants to dismiss plaintiffs' complaint against Dauphin County, Dauphin County Sheriff William Livingston, Dauphin County Deputy Sheriffs Richard Shroy and Charles Fisher, Judge of Election Judith Vallier, and Pennsylvania State Trooper Ralph McAllister. Appropriate briefing has been completed.

Plaintiffs' complaint is based on the following assertions. Plaintiffs Evelyn and Suzette Shoop and Brenda Webster were at the Fisherville Social Hall in Dauphin County, Pennsylvania on November 3, 1987 attempting to stop allegedly illegal election procedures, procedures they claim had occurred over a period of years. Complaint, ¶¶ 16, 18. Plaintiffs allege that the Deputy Sheriffs "wrongfully, without probable cause or authority illegally arrested" them and charged them with various crimes under the Pennsylvania Crimes Code. In effecting these arrests, plaintiffs further allege that Shroy, Fisher and McAllister used excessive and unnecessary force. Specifically plaintiffs claim that each of them, to one degree or another, was kicked, dragged and thrown around, punched, and handcuffed. Id. ¶¶ 16, 19. Plaintiffs claim that the actions of Shroy and Fisher were super-

vised, directed, instructed and controlled by Livingston. Id. ¶ 20. The criminal charges against plaintiffs were later dismissed. Id. ¶ 28.

Plaintiffs claim that they suffered physical injuries, lost wages and loss of future earnings as a result of this event. Id. ¶¶ 35–40. Their complaint sets forth four causes of action: (1) violation of 42 U.S.C. § 1983 by virtue of deprivations of rights guaranteed by the fourth and fourteenth amendments to the United States Constitution; (2) state claims of false imprisonment and assault and battery; (3) a state-law claim of malicious abuse of legal process, and (4) a state-law claim for intentional infliction of emotional distress. Plaintiffs seek compensatory and punitive damages and attorney fees. Dauphin County seeks its dismissal from all counts. Livingston and Vallier seek dismissal of all four counts. Shroy and Fisher seek dismissal of Count IV.

The standard for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6) requires the court to " 'take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff,' and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665–66 (3d Cir.1988) (quoting *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985)), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). The fact that a § 1983 claim is involved requires that the complaint be pled with "a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs," *id.* at 666 (quoting *Ross v. Meagan,* 638 F.2d 646, 650 (3d Cir.1981)), but does not change the standard for ruling on a 12(b)(6) motion. *Id.*[1]

Dauphin County challenges Count I on the basis that plaintiffs have failed to establish that "execution of [the county's] policy or custom, whether made by its law-

---

[1] The requirement of specificity has been established to protect against spurious and frivolous claims and to provide "sufficient notice of the claims asserted to enable preparation of responsive pleadings." *Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3d Cir.1988).

makers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Official policy may be inferred "from informal acts or omissions of supervisory municipal official," but not from "the misconduct of a single low-level officer." *Colburn*, 838 F.2d at 671. Plaintiff's allegation in *Colburn* stated that the township police had demonstrated a "custom of laxity regarding ... monitoring of ... jail cells." Plaintiff also alleged that two earlier suicides had occurred in the jail cells. The Third Circuit held this satisfied the "factual specificity" requirement by providing a statement from which the township's actual or constructive knowledge of laxity, and hence its liability, could be inferred. *Id.* at 672.

■ In the case at hand, plaintiffs assert they have satisfied the "official policy" requirement by stating that the Deputy Sheriffs acted "pursuant to the policies, procedures, directives, instructions and practices of [Dauphin County]." Complaint ¶ 13. This allegation is much less specific than the allegations in *Colburn* and fails to establish a basis for finding official policy. Nonetheless, in order to satisfy the objectives of "weeding out frivolous cases and keeping federal courts open to legitimate civil rights claims, courts should allow liberal amendment" of such claims. *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 923 (3d Cir.1976); *accord* Reply Brief at 3.[2]

■ Defendant Livingston also challenges the viability of Count I. Plaintiffs' complaint asserts that Livingston "supervised, directed, instructed and controlled Defendants Shroy and Fisher in their actions." Complaint ¶ 20. This also fails to meet the factual specificity requirement and plaintiffs will be required to amend the complaint in accordance with the *Rotolo* case and its progeny.

■ Vallier also challenges the adequacy of Count I. Plaintiffs argue that they have stated a proper section 1983 claim against Vallier for interference with election procedures. Brief in Opposition at 8–9. Plaintiffs rely on (1) paragraph 17 of their complaint which states that "[o]n at least one previous occasion, the Defendants, separately and in concert, attempted to interfere with proper election procedures ...," Complaint at ¶ 17, and (2) the Seventh Circuit case of *Kasper v. Board of Election Comm'rs*, 814 F.2d 332, 343 (7th Cir.1987). *Kasper* states, in the context of approving fictitious votes or diluting votes, that such a claim "can violate the Constitution and other federal laws," *Kasper*, 814 F.2d at 343–44, but that "violation of state election laws by state election officials does not transgress against the Constitution." *Id.* at 342. On the basis of the complaint, plaintiffs have failed to state a violation of election laws that rise to a constitutional level. In addition plaintiffs have not attempted to argue that Vallier has any connection to the alleged fourth amendment violations on which their complaint is clearly based. *See* Brief in Opposition at 8–9. The court therefore adopts the defendants' position and will dismiss Count I against Vallier.

In Count II plaintiffs assert claims of false imprisonment and assault and battery against all defendants "separately and in concert." In Count III plaintiffs allege malicious abuse of process against all defendants "separately and in concert." Defendants Livingston and Vallier seek the dismissal of both counts against them. Plaintiffs argue that neither Vallier nor Livingston need to have been present or to have directly engaged in the action at the Fisherville Social Hall because they *acted in concert* with those present to commit the alleged torts. Plaintiffs assert that Pennsylvania recognized a concert of action theory in *Kline v. Ball*, 306 Pa.Super. 284, 452 A.2d 727 (1982). In *Kline*, the court basically found that the nonsuit of a case by the trial court was proper when no evidence was submitted to enable anyone to determine who among a group of teenage boys had dared friends to play a prank

---

**2.** Defendant also addresses the unavailability of the theory of *respondeat superior.* The court need not address that issue in light of its decision to allow amendment.

that resulted in a school staff member's injury. *Id.* at 287, 452 A.2d at 728. Had there been evidence to discern who was responsible, the court indicated it might have allowed a claim against that individual under the principle of "acting in concert" or "of liability without fault for injuries to the [plaintiff]." *Id.* at 287–88, 452 A.2d at 728–29.

██ The court believes that Pennsylvania permits vicarious liability. *See, e.g., Larry v. Penn Truck Aids, Inc.,* 94 F.R.D. 708 (E.D.Pa.1982). Claims based on the principle of concert of action have now often merged with the claim of civil conspiracy. *Id.* at 722 (using those two labels interchangeably); *see generally* W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on the Law of Torts, § 46 (5th Ed.1984). While the court believes the state accepts joint action claims, "[the Third C]ircuit requires that claims which seek to impose liability on the basis of conspiracy or concert of action be pled with specificity. (citations omitted)." *Larry,* 94 F.R.D. at 722. Plaintiffs' complaint currently lacks such specificity and they will be granted leave to amend their complaint.

██ Defendants argue that Count IV's claim for intentional infliction of emotional distress must be dismissed for two reasons: (1) Pennsylvania would not recognize the claim, and (2) if, relying on Third Circuit case law, it is held that Pennsylvania would recognize the cause of action then plaintiffs have nonetheless failed to state a cause of action by not alleging that they sought expert medical confirmation for their alleged emotional distress. Reply Brief at 11–12. Plaintiffs, of course, argue that Pennsylvania does recognize the tort of intentional infliction of emotional distress.

The Third Circuit stated in *Williams v. Guzzardi,* 875 F.2d 46 (3d Cir.1989), "Given *Kazatsky*'s express reservation of the viability of § 46 [of the Restatement of Torts on intentional infliction of emotional distress] and the court's specification of the evidence necessary to prove that kind of injury, we are unable to say that Pennsylvania will not impose liability for intentional infliction of emotional distress." *Id.* at 51. *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988 (1987), stated on the subject that it did not need to consider the "viability of section 46" in Pennsylvania, because the evidence in the case did not establish a right of recovery under the terms of that section. *Id.* at 185, 527 A.2d at 989. The trial court decision to nonsuit plaintiffs in that case was upheld by the Supreme Court of Pennsylvania because plaintiffs did not submit evidence that they had sought medical or psychiatric counselling or professional help to deal with the underlying dispute concerning maintenance of their deceased children's gravesites. *Id.* at 197–98, 527 A.2d at 995. The court held that recovery for the tort of intentional infliction of emotional distress could not be awarded "without expert medical confirmation that the plaintiff actually suffered the claimed distress." *Id.* The court further stated that "if section 46 of the Restatement is to be accepted in this commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Id.*

Lower courts in the state have disagreed on the interpretation of *Kazatsky.* Some courts have held that it specifically bars the action in Pennsylvania, *see Ford v. Isdaner,* 374 Pa.Super. 40, 44, 542 A.2d 137, 139 (1988), while others have interpreted it as standing for the proposition that the tort is allowed, but only in very limited circumstances where the conduct is truly outrageous and where the plaintiff has presented competent medical evidence of intentional infliction of emotional distress, *Houston v. Texaco, Inc.,* 371 Pa.Super. 399, 404, 538 A.2d 502, 504 (1988). In light of this disagreement and the Third Circuit's view of the state's predilection, this court will assume that Pennsylvania recognizes the cause of action.[3] Even so, plaintiffs

**3.** In a footnote to their Reply Brief, defendants requested that the court certify for immediate appeal pursuant to 28 U.S.C. § 1292(b) the issue of whether federal courts should recognize a cause of action for intentional infliction of emotional distress. *See* Reply Brief at 11 n. 2.

must get over two hurdles to present a viable claim: establish outrageousness and provide competent medical evidence of harm. Given the standard for dismissal, the court can not say at this point as a matter of law that there exists no set of facts on which relief could be granted.

■ In defendants' reply brief they raise for the first time the defense of Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.Cons.Stat.Ann. §§ 8541–8564 (Purdon 1982 and Cum.Supp.1989), on behalf of Dauphin County. Defendants said they would agree to permitting plaintiffs to respond to this specific argument. Therefore, the court will grant plaintiffs time to demonstrate to the court why the Political Subdivision Tort Claims Act does not bar suit against the county.

An appropriate order will be issued.

However, defendants have not shown that the issue presents a "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal ... may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b). Therefore, the court declines to certify this issue.